**James A. BOYCE, Appellant,**

v.

**Dr. ALIZADUH, and his Insurance Company, c/o Washington County Detention Center, Hagerstown, Md. and "Dick" Ford, Sheriff, Washington County, Maryland, Hagerstown, Md. 21740 and Carl Frick, Director, Washington County Detention Center, Hagerstown, Md. and Spurrier, U. S. Marshall for the District of Maryland and Dr. Kolakowski, USPHS Hospital, Baltimore, Maryland, Appellees.**

**No. 77–2242.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 8, 1979.

Decided April 2, 1979.

Jerrold B. Pinsker, Rockville, Md., for appellant.

Michael A. Anselmi, Asst. Atty. Gen., Baltimore, Md. (Francis B. Burch, Atty. Gen. of Md., Clarence W. Sharp, Asst. Atty. Gen., Chief, Crim. Div., Baltimore, Md., on brief), for appellees.

Before BUTZNER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

DONALD RUSSELL, Circuit Judge:

The plaintiff, a federal prisoner, incarcerated in a State Detention Center, has filed *pro se* a § 1983, 42 U.S.C. action, charging a constitutional violation of his right to medical attention and care. He accompanied his complaint with a motion for leave to proceed in *forma pauperis*. The district court permitted the docketing of the action but later dismissed the complaint without the issuance of a summons, ruling that "it ap-

pears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." The plaintiff has appealed that dismissal.

■ The district court rested its authority to dismiss on § 1915(d).[1] The exercise of this statutory authority as a basis for dismissal of an action, particularly in connection with a *forma pauperis* suit by prison inmates, has long been approved in this Circuit. *Graham v. Riddle* (4th Cir. 1977) 554 F.2d 133, 134–5; *Caviness v. Somers* (4th Cir. 1956) 235 F.2d 455, 456; *Fletcher v. Young* (4th Cir. 1955) 222 F.2d 222, 224, *cert. denied* 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 802; *Mann v. Leeke* (D.S.C.1974) 73 F.R.D. 264, 265, *aff'd.* 551 F.2d 307; *Hawkins v. Elliott* (D.S.C.1974) 385 F.Supp. 354, 357; *Spears v. United States* (S.D.W.Va. 1967) 266 F.Supp. 22, 25; *Farley v. Skeen* (N.D.W.Va.1953) 113 F.Supp. 736, 737, appeal dismissed for want of exhaustion of state remedies, with the statement that "[w]e would * * * affirm the decision below if the case were properly before us." 208 F.2d 791, 792. The procedure to be followed in its exercise was outlined in the first case in this circuit to consider the question:

"Where a petition for habeas corpus by a poor person is meritless, the court may permit the filing of such petition and then dismiss it as frivolous, and in a patently frivolous proceeding respondent will not be called upon to make a return or answer." 113 F.Supp. at 737.

The two-step procedure followed in *Skeen*, whereby the district court determines whether the plaintiff qualifies by economic status under § 1915(a), and then, after allowing the complaint to be docketed upon a finding of economic justification, proceeds to the next step of determining whether the action stated in the complaint

is "frivolous or malicious" within § 1915(d) before permitting the issuance of process, is the very procedure followed by the district court in this case and is the very procedure recommended by Judge Aldisert's committee in its *"Recommended Procedures For Handling Prisoner Civil Rights Cases In the Federal Courts"* (Federal Judicial Center, Tentative Report No. 2, 1977). This is, also, the procedure followed in the district court in *Gamble v. Estelle* (5th Cir. 1977) 554 F.2d 653 (on remand from the Supreme Court, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251), *cert. denied* 434 U.S. 974,[2] 98 S.Ct. 530, 54 L.Ed.2d 465.

In its Report, Judge Aldisert's committee declared:

"Some courts have blurred the distinction between § 1915(a) and § 1915(d) by approving the practice of denying leave to proceed in forma pauperis on the ground that the complaint is frivolous or malicious. The practice observed by most courts is to consider only the petitioner's economic status in making the decision whether to grant leave to proceed in forma pauperis. Once leave has been granted, the complaint should be filed and the court should consider whether to dismiss pursuant to § 1915(d). See commentary following standard D, *infra*."[3]

The language of the commentary following Standard D is:[4]

"The committee recommends that the decision whether to dismiss pursuant to § 1915(d) be made prior to the issuance of process. In this way the defendant will be spared the expense and inconvenience of answering a frivolous complaint.

"The committee recommends dismissal with no opportunity to respond when the complaint is irreparably frivolous or malicious. If the defect in the complaint is

---

1. 28 U.S.C. § 1915(d) provides:

"The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."

2. The Supreme Court's *sub silentio* treatment of the procedure by the majority opinion in 429

U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 was considered in *Smart v. Villar* (10th Cir. 1976) 547 F.2d 112, 113–4, to be an approval of the procedure followed by the district court here.

3. Page 54.

4. Pages 56 and 57.

reparable, the court should issue an order to show cause, permitting the plaintiff to respond and to amend. If there are multiple defendants, the complaint should be dismissed as to those defendants against whom a frivolous or malicious cause of action is alleged and should be allowed to continue against the other defendants. In borderline cases, the court should not dismiss, but should let the case proceed and rule on a subsequent motion to dismiss if one is presented."[5]

██ Turning from the procedure to be used under § 1915(d) to the substantive question of when the power thereby given is to be exercised, many decisions have declared that the exercise of that authority is discretionary and that the discretion is "especially broad" in civil rights · actions brought by prisoners. *Flowers v. Turbine Support Division* (5th Cir. 1975) 507 F.2d 1242, 1244; *Diamond v. Pitchess* (9th Cir. 1969) 411 F.2d 565, 566; *Shobe v. California* (9th Cir. 1966) 362 F.2d 545, 546, *cert. denied* 385 U.S. 887, 87 S.Ct. 185, 17 L.Ed.2d 115; *Boston v. Stanton* (W.D.Mo.1978) 450 F.Supp. 1049, 1053–4; *Ramsey v. United States* (N.D.Ill.1978) 448 F.Supp. 1264, 1275–6; *Jones v. Bales* (N.D.Ga.1972) 58 F.R.D. 453, 463–4, *aff'd.* 480 F.2d 805 (5th Cir.).[6] But however broad the discretion may be, it may not be exercised arbitrarily and is limited in a *pro se* case, such as here, by the rule in *Haines v. Kerner* (1972) 404

U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 and in every case by the language of the statute itself which restricts its application to complaints found to be "frivolous or malicious."[7] There is, it will be noted, little practical difference between the *Haines* rule and the definition to be given "frivolous" under the statute. The rule in *Haines* as reaffirmed in *Estelle v. Gamble* (1976) 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, is that "a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Frivolousness of a complaint under § 1915(d) has been defined in largely those same terms. Thus, Judge Bell in *Watson v. Ault* (5th Cir. 1976) 525 F.2d 886, 892, defined frivolity under the statute:

> "The test of frivolity in the context of Section 1915(d) in the trial court, has not been defined. In *Anders v. California*, 1967, 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493, 498, the Supreme Court in a criminal case defined a frivolous appeal as being one without arguable merit. In our view this same test or standard should be applied in the trial court but in terms of the arguable substance of the

---

**5.** The language of the committee in its first report (1975) is substantially the same as that in its second report, quoted above. *See Sinwell v. Shapp* (3d Cir. 1976) 536 F.2d 15, 18–19, notes 9 and 10.

**6.** The rationale for this "especially broad" discretion in prisoner civil rights cases is stated in *Jones v. Bales, supra,* 58 F.R.D. at 463:

> "There are compelling reasons for allowing courts broader dismissal powers in forma pauperis suits—especially damage suits brought by convicted prisoners—than in other cases. Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for 'malicious prosecution' or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file

complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong. As Justice Rehnquist has noted, 'Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse.' *Cruz v. Beto,* 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1972) (dissenting)."

**7.** In *Williams v. Field* (9th Cir. 1968) 394 F.2d 329, 331, *cert. denied* 393 U.S. 891, 89 S.Ct. 213, 21 L.Ed.2d 171 the Court said that the discretion under § 1915(d) was to be exercised "generally only where it would be proper to dismiss the complaint sua sponte before service of process if it were filed by one tendering the required fees."

claim presented, both in law and in fact." [8]

To satisfy the test of frivolousness under § 1915(d), it is accordingly essential for the district court to find "beyond doubt" and under any "arguable" construction, "both in law and in fact" of the substance of the plaintiff's claim that he would not be entitled to relief. *Conley v. Gibson* (1957) 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80; *Watson v. Ault, supra* 525 F.2d at 892. And a dismissal under such standard is appealable. *Roberts v. U. S. District Court* (1950) 339 U.S. 844, 845, 70 S.Ct. 954, 94 L.Ed. 1326; *Flowers v. Turbine Support Division, supra*, 507 F.2d at 1244; *Foster v. United States* (6th Cir. 1965) 344 F.2d 698, 700. In resolving this appeal and in determining whether the district court abused its discretion in dismissing the action against all defendants, we must thus apply the standard of frivolousness and want of arguable merit declared in *Haines* and *Watson* to the facts, liberally construed, as set forth in the plaintiff's discursive complaint.

The plaintiff alleges in his complaint that he developed an infection in both ears while incarcerated in Washington County Detention Center, Hagerstown, Maryland, as a prisoner. He had had such an infection on at least three occasions prior to his incarceration and had been successfully treated for it. When he reported his infection to the prison authorities on this particular occasion, he was directed to the prison physician, the defendant Alizaduh, for medical attention. When seen by Dr. Alizaduh, the plaintiff told the doctor of his previous successful treatment of the condition. This prior treatment consisted, according to him, of a "white kind of Kenalog Cream and Timmeral tablets for the itching" and some "little white pills called steriods or some-

thing like that." He, also, identified certain drugs to which he was supposed to be allergic. He specifically identified "Keeplex" and certain "Otic drop solutions" as such drugs.

Despite what may be considered, under a liberal construction of the pleadings, plaintiff's warning that "Otic drop solutions" might produce an allergic reaction from such treatment, Dr. Alizaduh proceeded to prescribe for his condition "Neo-Decadron Otic drops." The result, plaintiff alleges, was a serious aggravation of the infection. At this point, the plaintiff referred Dr. Alizaduh to his prior medical records and the drugs which were used in his earlier successful treatment of the infection. These records, he said, were available in Baltimore. Dr Alizaduh, however, directed the continuance of the "Otic" drops, even though it is inferable from plaintiff's allegation that such drops had caused the plaintiff's condition to become more aggravated, as the plaintiff had previously warned the physician. Later, at a meeting with Dr. Alizaduh at his offices, the plaintiff renewed his request that the physician obtain his prior medical record or consult with an "ENT Specialist" on the treatment of his infection. On this visit, Dr. Alizaduh did make a culture of the infection and prescribed the antibiotic Amphicillin. The condition of the plaintiff, though, continued to deteriorate. He had swelling in both his arms and legs and some fluid emissions and a "host of watered pimples," later diagnosed as "a general allergic id reaction." Finally, his condition became such that he was transferred to the United States Public Health Service Hospital in Baltimore, Maryland, for treatment of his condition, which had by that time become serious and which, according to the plaintiff's allega-

---

**8.** Some courts have defined a "frivolous" action within § 1915(d) as one in which the "plaintiff's realistic chances of ultimate success * * * are slight, * * *." *Boston v. Stanton, supra*, 450 F.Supp. at 1054; *Serna v. O'Donnell* (W.D.Mo.1976) 70 F.R.D. 618, 621; *Clark v. Zimmerman* (M.D.Pa.1975) 394 F.Supp. 1166, 1178; *Jones v. Bales, supra*, 58 F.R.D. at 464. The basis for this definition is forcefully stated in *Jones v. Bales* and the lan-

guage of the court in that case has often been quoted in later cases, expressing the same rule. We, however, are not certain that such rule can be squared with the language of the court in *Haines* and *Estelle* and we are inclined to accept the definition of frivolity stated in *Watson*, quoted in the text. The Aldisert committee, too, appears to adopt the *Watson* standard. Page 57.

tions, he heard described by some hospital personnel as looking like "the dreaded staff [staph] disease." As a result of what he alleged to have been intentional mistreatment of his condition, he suffered intense pain and discomfort.

It was the position of the district court that these allegations of the plaintiff set forth no more than a disagreement between the plaintiff and the physician over the proper treatment of the plaintiff's condition. Were this the full possible extent of plaintiff's claim, the action of the district court could not be faulted. *Estelle v. Gamble, supra,* 429 U.S. at 104, 105, 97 S.Ct. at 292, makes it quite clear that mere error of judgment or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under § 1983, 42 U.S.C.; it is only when there is a "deliberate indifference to serious medical needs" of a prisoner that the conduct of the physician rises to the level of a constitutional deprivation.[9] But it is possible to deduce from the inartful and over-discursive language of the complaint that the plaintiff is charging that he warned the prison physician of his possible allergic reaction to the medicine being prescribed by the physician, and that, even after this possibility had been established as

a fact, the physician persisted in prescribing the very same medication which had caused the allergic reaction, with the result that the plaintiff suffered a serious and painful aggravation of his condition.[10] We do not mean to find that such is the necessary thrust of the plaintiff's allegations; we merely find that the allegations of the plaintiff are sufficient under these circumstances to overcome a charge of "frivolousness" against a *pro se* complaint under § 1915(d) and to make necessary a response from the prison physician, Dr. Alizaduh.[11]

However, the prison officials other than the prison physician, are beyond any doubt not liable to the plaintiff under any conceivable state of facts. There is no intimation in plaintiff's complaint that these officials were neglectful of the plaintiff's needs. They promptly provided the plaintiff with medical attention. The prison physician, to whom they referred the plaintiff, promptly saw the plaintiff and engaged on a course of treatment. The plaintiff does allege that he complained to one of the prison guards about the medical treatment which was being given him but the guard could not be held liable for any alleged dereliction by the prison physician. The dismissal of the action against all the defendants other than the prison physician, Dr. Alizaduh, is accordingly affirmed[12] but

---

9. *See, also, Russell v. Sheffer* (4th Cir. 1975) 528 F.2d 318 at 319:

"Questions of medical judgment are not subject to judicial review" and do not present a constitutional violation regressable under § 1983.

10. *See Thomas v. Pate* (7th Cir. 1974) 493 F.2d 151, 158, *cert. denied* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (plaintiff brought to attention of nurse his allergy to penicillin, but was nonetheless given shot with bad results); *Williams v. Vincent* (2d Cir. 1974) 508 F.2d 541, 544 (choice of less efficacious treatment than that requested by plaintiff-prisoner may amount to deliberate indifference.) Both of these cases are cited with approval in *Estelle,* 429 U.S. at 106, n. 14, 97 S.Ct. 285.

11. Our position is that stated in *Vinnedge v. Gibbs* (4th Cir. 1977) 550 F.2d 926, 928:

"We think the complaint stated enough so that it should not have been dismissed, but

we hasten to add we express no opinion as to whether or not the plaintiff with aid of counsel will be able to state a cause of action."

12. This accords with what the court did in *Vinnedge v. Gibbs, supra,* and what was done on remand from the Supreme Court in *Gamble v. Estelle* (5th Cir. 1977) 554 F.2d 653, 654, *rehearing denied* 559 F.2d 1217, *cert. denied* 434 U.S. 974, 98 S.Ct. 530, 54 L.Ed.2d 465. In *Gamble,* the court, in dismissing the action against the prison officials, said (p. 654);

"Here Gamble has failed to meet the rigorous guidelines described above. His complaint is directed primarily at the prison physician who actually performs the medical treatment, while the Director and the warden are parties, not for having failed to provide treatment, but more on respondeat superior principles in line with their official capacities. We can find no evidence in the record that either exhibited 'deliberate indifference' to

**954**

the dismissal of Dr. Alizaduh is reversed with directions that process should issue against him.

Affirmed in part and reversed in part and remanded to the district court with directions.

Gamble's medical needs by means of interference with the prison doctor's performance or in any other manner which would satisfy the Supreme Court standard."