**C. Sir William CRAWFORD, Plaintiff,**

v.

**C. O. Jim O'HARA, Sgt. Vincent Mahonik, et al., Defendants.**

**No. 81–CV–88.**

United States District Court,
N. D. New York.

Jan. 8, 1982.

C. Sir William Crawford, pro se.

Robert Abrams, Atty. Gen. of the State of New York, Albany, N.Y., for defendants; Daniel L. Saxe, Deputy Asst. Atty. Gen., Albany, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, District Judge.

The pro se plaintiff in this action under 42 U.S.C. § 1983 is presently an inmate of Great Meadow Correctional Facility. The complaint charged constitutional violations alleged to have taken place during the search of his cell and seizure of certain papers while he was an inmate of Auburn Correctional Facility. I dismissed the complaint sua sponte by memorandum-decision and order dated January 22, 1981 on the ground that the claim, as I read it, could not be granted the necessary constitutional stature to plead a viable claim under the provisions of 42 U.S.C. § 1983. *Crawford v. O'Hara*, 508 F.Supp. 154 (N.D.N.Y.1981). In this first decision, I quoted in full the fairly brief one paragraph statement of facts of plaintiff's claim. The decision noted that the plaintiff had filed eleven civil rights complaints in this Court, four of which were dismissed and seven were directed to be filed and served. *See Green v. Camper*, 477 F.Supp. 758, 771 (W.D.Mo. 1979). Being fully aware of the liberal policy of the Second Circuit regarding pro se complaints of New York State prisoners, I emphasized in the decision that "Others may be able to but I am unable to grant constitutional stature to these claims that plaintiff says resulted in the seizure of 'worthless documents'". *See Fries v. Barnes*, 618 F.2d 988 (2d Cir. 1980); *compare Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Granville v. Hunt*, 411 F.2d 9, 12 (5th Cir. 1969); Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts, The Federal Judicial Center, 1980, Part II, Section B, Part IV, Section D.

Others were able to see, at least to the stated extent, that the complaint raises a colorable claim to warrant service of the complaint upon the defendants. A Panel of the Second Circuit Court of Appeals so ruled and remanded for this purpose and for further consideration by this Court in a four paragraph order of July 22, 1981. 661 F.2d 908. That order stated that the papers alleged to have been taken from the possession of the plaintiff, by a search of his cell, were not returned, and that by the statement in the claim that the papers were "worthless", as the plaintiff explained on appeal, only meant they were of no value to the prison authorities; *i.e.*, not contraband and subject to seizure.

The factual description of the plaintiff in the claim regarding the search of his cell, to my mind and with all due deference, has its light moments when envisioned in the set-

ting of a maximum security State prison, housing several thousand prisoners. The facts as alleged by plaintiff are: Corrections Officers O'Hara and Halstead came to the plaintiff's cell at Auburn on November 19, 1980, and instructed him to come out so they could search his cell. Plaintiff came out· and Corrections Officer O'Hara started reading plaintiff's confidential legal files and papers. Plaintiff advised defendant O'Hara that he was entitled to search through the papers, but not to read them. O'Hara said that Sergeant Mahonik, his supervisor, ordered him to read the papers. Plaintiff then advised O'Hara that the Sergeant had no such authority. O'Hara then told his colleague, Corrections Officer Halstead, to get Sergeant Mahonik. Halstead did so and Sergeant Mahonik came immediately to the scene. The Sergeant was confronted by the plaintiff and asked if he gave O'Hara such an order. Sergeant Mahonik admitted he gave the order but ignored the advice of the plaintiff as to what he could do and not do. Sergeant Mahonik, himself, proceeded to read the documents of the plaintiff, seized a set of corporate articles and five (5) pages, part of a grant. The plaintiff requested a receipt for the seized papers and the sergeant rendered the same, the plaintiff states.

The Second Circuit Panel, in its order, referred to the recent Supreme Court opinion and rulings in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), commenting that under that decision, it remains somewhat uncertain whether intentional removal of private papers from a prisoner's cell impairs rights protected by the Fourteenth Amendment. In *Parratt v. Taylor*, Justice Powell, I note, in his opinion concurring in the result observed in a lengthy footnote 13, at p. 1922, that resourceful counsel and receptive courts have extended vastly the reach of 42 U.S.C. § 1983. He noted statistically the marked increase of civil rights petitions filed in recent years by state prisoners in the federal courts under that statute. He stated relief from the numerous frivolous ones might come from continuances to allow exhaustion of administrative remedies, and

concluded that perhaps the time has come for a revision of this century-old statute in order to clarify its scope while preserving its historical function of protecting individual rights from unlawful state action.

In my memorandum-decision and order of August 3, 1981, the remand directive of the Second Circuit was followed, my previous order of dismissal was vacated, the complaint was reinstated and service directed to be made by the United States Marshal upon the two named defendants personally, Corrections Officer O'Hara and Sergeant Mahonik, at the Auburn Correctional Facility. In that three-page decision, I cited again the decisions that I believed upheld the search of plaintiff's cell under the circumstances stated in the complaint done in New York pursuant to a detailed directive. *Bell v. Wolfish*, 441 U.S. 520, 555–557, 99 S.Ct. 1861, 1882–1883, 60 L.Ed.2d 447 (1979); *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975), *modified en banc*, 545 F.2d 565 (7th Cir. 1976). I noted again in my second decision the bizarre relief the plaintiff demanded in his pro se complaint of $500,-000.00 compensatory and punitive damages from each corrections officer, to be considered as a donation to the Not for Profit Corporation, N.U.C.O. of Rochester, N.Y., to whom the seized papers are said to belong, and $25,000.00 as attorney fees.

There is now filed by the Attorney General of the State of New York, a motion to dismiss the complaint pursuant to Fed.R. Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motion is supported by the affidavit of Assistant Attorney General Daniel L. Saxe in behalf of the Attorney General of the State of New York, an affidavit of Corrections Sergeant Mahonik with an attached Exhibit "A", an updated version of the Department of Correctional Services 4910, that I referred to in my first decision, *Crawford v. O'Hara, supra*, p. 155. The affidavit of the Assistant Attorney General refers for legal support to the same two cases that I cited in the above reported decision, *Bell v. Wolfish, supra*; and *Bonner v. Coughlin, supra*. The plaintiff has filed his own affidavit in

response to the motion to dismiss, with attachment of affidavits of two Auburn inmates, Richard Long and William J. Van Wormer. In view of this response, and the affidavits submitted by both sides, I shall treat the motion to dismiss as a motion for summary judgment under Fed.R.Civ.P. 56 as Fed.R.Civ.P. 12(b) directs. If the complaint were to be dismissed again for failure to state a claim upon which relief can be granted, as it was in the first instance, the case might have to start from the beginning again.

As expected, the affidavit of Sergeant Mahonik is interesting and revealing about the facts of life in a maximum security prison. It is explained that he directed Corrections Officers O'Hara and Halstead to search the cell of the plaintiff pursuant to the guidelines in Directive 4910. He states the search was prompted by information received from another Corrections Officer, whom he names in the affidavit, that plaintiff Crawford was involved in a questionable activity that could be illegal. The Sergeant concluded that the plaintiff could be engaged in a "flim flam" operation involving a "corporation" set up by inmates. The affidavit states his concern was that Crawford along with other inmates could be utilizing "corporate" documents in an unauthorized manner. Corrections Officers O'Hara and Halstead were directed not to read any legal material kept by Crawford, but merely to leaf through and look for "corporation" documents. The affidavit of Sergeant Mahonik, contrary to plaintiff's version in the claim, states that Corrections Officer O'Hara located two pages of a document titled "Articles of Incorporation", and five pages of legal size letter paper relative to "Counsel of Churches from N.U.C.O." signed by William Crawford. The affidavit states the articles then were confiscated, and the Sergeant gave a receipt to plaintiff Crawford. The papers seized were then turned over by the Sergeant to a Lieutenant, and then forwarded as the Directive required to the Department of Correctional Services in Albany, N.Y. It is stated the articles, after several weeks, were returned to the facility and given back to plaintiff Crawford.

The affidavit states none of the legal papers of the plaintiff were read or seized. I should note at this point that in my second decision that is unreported, I assumed that plaintiff Crawford with all his lawsuits and other varied pursuits must have a lot of papers in his cell.

The response affidavit of plaintiff Crawford expresses broad constitutional principles concerning due process protections. There is some inkling of corporate experience with the stated comparison: " . . . our Constitution is fundamentally no different than a corporate charter and a citizen may sue to prevent acts which are unconstitutional just as minority stockholder may sue to prevent acts which are ultra vires." There is no denial that the so-called corporate papers were returned to him, nor does he describe in his affidavit any legal papers that Crawford claims were read or seized. The plaintiff's affidavit concludes that he urges a full hearing, with production by court order of the plaintiff's inmate witnesses and Corrections Officer O'Hara, or in the alternative that the defendants' motion be dismissed and that the evidence of the perjurious affidavit of defendant Sergeant Mahonik be turned over to the United States Attorney for criminal prosecution. Gilbert and Sullivan observed "the policeman's lot is an unhappy one."

The affidavits of inmates Long and Van Wormer, in nearby cells, do not dispute the material facts. Each verifies that the plaintiff was ordered out of his cell and kept on the scene while the papers in the cell were being searched. Each affidavit states there was discussion about the authority of the corrections officers to read through the papers in the cell, and each state that only certain papers were taken and a receipt given for them by the Sergeant to the plaintiff. There is no reference in regard to the return of the papers, and the fact of the return is therefore undisputed.

It is impossible again for me to aggrandize this set of facts into the stature of

constitutional violations and deprivations. As Justice Rehnquist emphasized, no one can rationally doubt that room searches represent an appropriate security measure, and even the most zealous advocate of prisoners' rights would not suggest a warrant is required to conduct such a search. *Bell v. Wolfish, supra*, 441 U.S. at p. 557, 99 S.Ct. at p. 1883. Justice Blackmun in his concurring opinion in *Parratt v. Taylor, supra*, 101 S.Ct. p. 1918, would require a state to institute procedures to contain and direct the intentional actions of its officers to insure due process. That is exactly what New York has done by its elaborate Directive 4910 in the search for contraband. The directive was fully complied with, a receipt was given for the articles seized, and they were returned. In my judgment there were reasonable grounds to initiate the search; the search was reasonable and due process was accorded.

There are no concrete particulars or specific facts set forth by the plaintiff to find or conclude otherwise. *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970); *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Summary judgment shall enter in favor of the defendants dismissing the complaint.

It is so Ordered.