Levon Arnez PYLES, Petitioner,

v.

Norman CARLSON, et al., Respondents.

No. C–81–2126.

United States District Court,
W. D. Tennessee, W. D.

Jan. 20, 1982.

Levon Arnez Pyles, pro se.

W. Hickman Ewing, Jr., U. S. Atty., W. James Ellison, Asst. U. S. Atty., Memphis, Tenn., for respondents.

FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER

HORTON, District Judge.

This case is one in which a federal prison inmate alleges violations of his federal constitutional rights by federal prison officials. The Court has reviewed the entire record in this case, including the Magistrate's Report and Recommendation. For reasons hereafter stated, the Court finds plaintiff's lawsuit to be frivolous and malicious. The Court therefore dismisses the complaint under the authority of 28 U.S.C. § 1915(d).

The complaint in this case was filed on February 13, 1981. An order was entered by the Court requiring the defendants to respond to plaintiff's claims that he had been deprived of various federal constitutional rights by the defendants. On July 10, 1981, the defendants moved the Court for summary judgment stating the pleadings and affidavits on file show no genuine issue of material fact and the defendants are entitled to summary judgment as a matter of law. Thereafter, the Court, by order dated July 31, 1981, referred the case to a Magistrate for a Report and Recommendation. The Magistrate filed a Report with recommendations on December 9, 1981. In that Report, the Magistrate recommended that all of plaintiff's charges be dismissed except those relating to claims for damages arising out of incidents occurring on April 10, 1980, and May 14, 1980. Those claims relate to defendants Davie, Hurt, Johnson and Rison. Plaintiff filed objections to the Magistrate's Report. The Court hereby adopts and approves all of the Magistrate's report except recommendations pertaining to the incidents alleged on April 10, 1980, and May 14, 1980. The Court finds those allegations in the complaint should also be dismissed.

In order to reach a decision on the whole case, the Court has read the entire file, including the voluminous Appendix filed by the defendants. That Appendix contains, among other items, affidavits by various prison officials including a warden, associate warden and numerous other prison officials.

The Court has also read the considerable disciplinary record of the plaintiff catalogued on pages 65–155 of the Appendix. The record shows the plaintiff to be a 27 year old resident of Pasadena, California. He is serving a 4–6 year Youth Corrections Act, 18 U.S.C. § 5010(b) sentence for bank robbery. The record reveals this plaintiff has been a substantial disciplinary problem while serving his prison sentence. His disciplinary record reflects a total of 40 incident reports. The incident reports show charges ranging from conduct disrupting the orderly running of an institution to assaulting prison officials. The record also reflects an entry showing the plaintiff was indicted by a Federal Grand Jury in the Western District of Texas for assaulting a prison officer at Bastrop, Texas. In fact, plaintiff's conduct led prison officials at one point to recommend that he be transferred to the federal penitentiary at Lewisburg, Pennsylvania.

Plaintiff's conduct has resulted in five disciplinary transfers. To date, he has served in the following Federal Correctional Institutions:

1) Terminal Island, California, where his conduct resulted in five (5) incident reports

2) Englewood, Colorado, where his conduct resulted in twenty-four (24) incident reports

3) El Reno, Oklahoma, where his conduct resulted in six (6) incident reports

4) Bastrop, Texas, where his conduct resulted in five (5) incident reports

5) Memphis, Tennessee

6) Talladega, Alabama

After reading plaintiff's complaint relating to the April 10, 1980, and May 14, 1980, incidents, the Court concludes the entire complaint, including those allegations, should be dismissed as frivolous and malicious. Section 1915(d), Title 28, United States Code, permits the Court to dismiss the case "if satisfied that the action is frivolous or malicious."

The test for determining whether a complaint is frivolous or malicious has been stated in *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979):

The test of frivolity in the context of Section 1915(d) in the trial court, has not been defined. In *Anders v. California*, 1967, 386 U.S. 738, 744, 87 S.Ct. 1396 [1400], 18 L.Ed.2d 493, 498, the Supreme Court in a criminal case defined a frivolous appeal as being one without arguable merit. In our view this same test or standard should be applied in the trial court but in terms of the arguable substance of the claim presented, both in law and in fact.

To satisfy the test of frivolousness under § 1915(d), it is accordingly essential for the district court to find beyond doubt and under any arguable construction both in law and in fact of the substance of the plaintiff's claim that he would not be entitled to relief.

A fair and objective consideration of the pleadings and the affidavits in this case show the complaint should be dismissed as being frivolous and malicious.

Referring to the April 10, 1980, incident, the complaint alleges:

On 4–10–80 after the plaintiff had requested to be allowed to use the Law Library and had been told by Officer Davie that he could the plaintiff being Levon A. Pyles, Reg. No. 14648–116, was lied to by this officer. After the person whom the plaintiff was behind came out of the law library, Officer Davie told inmate Pyle that he was no longer next on the list but that he had placed some other inmates in front of him. Inmate Pyles attempted to direct Officer Davie attention to a recent administrative remedy response that he had received from the Wardens office stating that the Law Library was on a first come first served basis. The officer choose to ignore this, at that time inmate Pyles attempted to call Officer Freeman who was the Senior officer in the segregation unit that day and therefore officers Davies immediate superior. When the plaintiff attempted to call this officer, Officer Davis ran up the steps to get to the plaintiffs cell,

when he got to the plaintiffs cell he opened the door and ran inside and punched the plaintiff in the face and grabbed his hair, the officer continued to beat the plaintiff the plaintiff responded by asking the officer to stop beating him if he had done something wrong then he should write an incident report on him, that physically beating him was not proper, the officer made no response to this and continued beating the plaintiff about the face and body. (Quoted in its entirety as written by plaintiff).

In response to those allegations, the defendant, Correctional Officer, Robert H. Davie's affidavit states:

At this time, Mr. Pyles reached with his right hand, grabbing my right arm and attempting to leave his cell. I attempted to push him back into the cell in order to lock the door. I could not get the door closed as Mr. Pyles had grabbed my shirt and it tore as he was going back into the cell dragging me with him.

I was able to restrain Mr. Pyles by holding his head to my belt with my left hand. My thumb was on his nose and my fingers in the area of his ear. My right hand was on his left arm, forcing him against the cell wall and corner of the bed. I could tell he had me clutched too tightly, holding on to my belt both in front and back that I could not get him loose without hurting him. I needed to call for help and in order to do so, I had to release my grip and push my body alarm. Mr. Pyles was able to get an arm free and hit me in the face. I then had to wrestle with him to get him under control. I held him with my left hand around the back of his neck and held his left arm with my right hand and forces him against the wall until help arrived. When the other officers arrived and had Mr. Pyles constrained, I stepped out of the cell.

Mr. Pyles alleges that on April 10, 1980, I refused to let him use the Law Library. Mr. Pyles was on the list to use the Law Library on this date but not the next in line. The Law Library is made available on a first-come-first-serve basis.

The names of the inmates desiring to use the facility are placed on a list and they are permitted in the Law Library in that order. On this date, Mr. Pyles thought that he was next in line but, in fact, was not. He was placed in the Law Library in the order specified.

The medical report of plaintiff, Pyles reads at page 100:

On the above date I examine (sic) the above inmate after being in a confrontation in Seg. Unit. The following injuries were noted:

1. 1 nun superfical (sic) laceration to his left inner ear with a superfical (sic) skin flap. No sutures were required.

2. Small abrasion to the bridge of his nose, were (sic) his glasses apparently hit this area.

All wounds were cleaned and no further treatment was required at this time.

The medical report on Officer Davie reads at page 100 of the Appendix:

On the above date I examine (sic) the above Officer for injuries after being in a confronation (sic) in Seg. Unit, with inmate Pyles, Levon, # 14648–116. The following injuries were noted.

1. Profuse bleeding of the left side of his nostril. X-Rays of the nasal bone were negative. There was mild swelling of his lower lip.

2. Superfical (sic) abrasion of his upper right arm.

Aboved (sic) injuries were cleaned and no further treatment was needed at this time.

Referring to the May 14, 1980, incident, the complaint charges:

On 5–14–80, plaintiff is awakened by noises and goes to his door and observes several officers in the hallway next door to his cell. Lt. James B. Hurt comes to plaintiff's door and says "sit on the bed," and then Captain Hudson comes to plaintiff's door and says, "I'm been wanting to get you for a long time, young punk, handcuff him," and plaintiff is handcuffed and placed in handcuff restraints.

After plaintiff has been placed in the restraints, A. Warden Rison, who is one of the staff in my cell, calls me a nigger, and C. O. L. D. Johnson jumps on my stomach, and Lt. James B. Hurt takes my pillow covers my face and strikes me in the face several times and then all the staff exit my cell. (Quoted in its entirety as written by plaintiff).

The affidavit of Associate Warden Richard H. Rison at page 5, Appendix reads:

On May 14, 1980, at approximately 9:00 A.M., I was informed that an inmate was refusing to leave his cell in the Detention Unit. Upon entering the Unit, I observed inmate Pyles, Register Number 14648–116, yelling out of his cell, encouraging the inmate to continue to refuse to be removed from his cell.

I witnessed J. B. Hurt, Correctional Supervisor, give Mr. Pyles a direct order to move away from his door and sit on his bed. He continued to be abusive and refused to move away from his door. Mr. Pyles was instructed at least three (3) times to move away from the door and sit on his bed. He refused and continued to curse staff, and it became evident that his disruptive behavior was agitating the other inmates in the Unit.

Mr. Pyles was ordered to put his hand through the food slot opening in the door in order to place him in restraints so that staff could safety (sic) enter his cell and move him back on his bed. Mr. Pyles initially refused but then allowed himself to be restrained. His cell door was then opened and several officers entered. Mr. Pyles was given a direct order to sit on his bed, which he refused. Correctional Supervisor, J. B. Hurt, then placed Mr. Pyles in a sitting position on his bed, at which time Mr. Pyles began struggling, cursing, and attempted to kick several officers. Mr. Pyles was then controlled by several officers until soft restraints could be applied. I entered Mr. Pyles' cell to see if he had received any injuries. Even in constraints he continued to be loud and disruptive, threatening to kill the staff that entered his cell.

I observed the entire incident concerning Mr. Pyles, and at no time did Correctional Office L. D. Johnson, jump on Mr. Pyles' stomach nor did Correctional Supervisor, J. B. Hurt, place a pillow over Mr. Pyles' face. At no time was Mr. Pyles struck by an officer. After Mr. Pyles was constrained, he was examined by a Physician's Assistant, and no injuries were found.

The Affidavit of Correctional Supervisor James B. Hurt at page 11, Appendix, reads:

On May 14, 1980, inmate Pyles was being quite disruptive in the Detention Unit. I directed him to step back away from his door and sit on his bed. He failed to respond to this and repeated orders to step back from the door and sit on his bed. Mr. Pyles was ordered to place his hands through the food slot opening in the door so that constraints could be applied in order to permit staff to safely enter the cell. He initially refused but then allowed constraints to be applied. Several staff then entered Mr. Pyles' cell, at which time I ordered him to sit on his bed, which he refused. I then attempted to place him in a sitting position but he began struggling and attempted to kick staff. With the assistance of several staff, Mr. Pyles was constrained. At no time during this incident, did I place a pillow over Mr. Pyles' head and strike him as he claims. I recall holding his shoulders to the bed with my hands.

The Affidavit of Senior Officer L. D. Johnson at page 7, Appendix, reads:

I was on duty in the Administrative Detention/Disciplinary Segregation Unit on May 14, 1980. At approximately 9:00 A.M., inmate Pyles, Register Number 14648–116, was causing a great deal of confusion in the Unit through his verbal threats toward staff and his banging on his cell door. His outburst was his form of support for another inmate who was also being disruptive in the Unit. Inmate Pyles refused to quiet down even under direct order to do so and it became necessary to enter his cell. Several staff were

present when we entered the cell; and, upon entry, I observed J. B. Hurt, Correctional Supervisor, extend his arm, with the palm of his hand landing on Mr. Pyles' chest. This forced Mr. Pyles into a sitting position, at which time I grabbed his legs to keep him from injuring staff as he was attempting to kick at us. I held Mr. Pyles' legs and placed my kneee firmly against his lower abdomen to minimize injury to myself, other staff, and Mr. Pyles. I did not jump on Mr. Pyles' stomach as he claims nor did I observe J. B. Hurt, Correctional Supervisor, cover his face with a pillow or strike him at any time.

There is no doubt in the Court's mind that this plaintiff cannot obtain any judgment against any defendant in this case because the case has no arguable merit. This plaintiff created the incidents he alleges to be violations of his federal constitutional rights. He simply refuses to conduct himself in a non-belligerent and non-disruptive manner. He defies prison authority. To require these defendants, prison officials, to defend against this lawsuit by this plaintiff makes no sense whatever. This Court is not unmindful of the importance of safeguarding, in a vigilant way, the constitutional rights of prisoners. The Court is simply making a finding in this case that the complaint is frivolous and malicious. The case amounts to nothing more than another form of harassment of prison officials by the plaintiff.

Recently, the Supreme Court indicated that a finding of frivolousness and maliciousness under 28 U.S.C. § 1915(d) might be based upon a record showing that a prisoner did not comply with a rule of court or had filed numerous complaints. *Boag v. MacDougall,* —— U.S. ——, 102 S.Ct. 700, 70 L.Ed.2d ——, 1981. This Court finds this prisoner's record showing disruptive, belligerent and violent conduct in prison and against prison officials justifies a finding that his complaint, considered in light of his prison record, is frivolous and malicious.

It is therefore by the Court

ORDERED that the Complaint in this case is dismissed pursuant to 28 U.S.C. § 1915(d) because it is frivolous and malicious.