Jackie Lee **JOHNSON**, Plaintiff,

v.

Alton **BASKERVILLE**, Warden, et al., Defendants.

**Civ. A. No. 83–0312–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 21, 1983.

---

**3.** Plaintiffs' counsel sought a multiplier of 3 which would have resulted in a fee of $333,-581.25.

Jackie Lee Johnson, pro se.

## MEMORANDUM OPINION

CACHERIS, District Judge.

The plaintiff is an inmate at the St. Brides Correctional Center and has brought this case, pursuant to 42 U.S.C. § 1983, *pro se* and *in forma pauperis.* Reading his complaint in the most favorable light, it alleges lack of adequate and effective medical treatment. Plaintiff has submitted to the court a standard complaint form and copies of several grievance forms which he has filed at St. Brides since November 8, 1982. The court has neither ordered nor received any pleadings, statements or other materials from any of the defendants. Thus, all

of the facts before the court are those submitted by the plaintiff.

I

FACTS

Plaintiff arrived at St. Brides on November 8, 1982. Approximately two months later he began to complain about metal items which were lodged within his right arm.[1] He complained of pain and requested that the items be removed. In his grievance forms filed on January 14, 1983 and on February 2, 1983, both of which plaintiff attached to his complaint, plaintiff admitted that *he* had put these metal items into his arm before he arrived at St. Brides.[2] In his February 2, 1983 grievance form he admitted that he had been to the defendant, Dr. Romm, and that "he said let it come out its self. This has been in my arm for 3 months and is not comeing out by its self. I ask him to take it out and [Dr. Romm] said *NO* !" (emphasis in original). In each of the grievance forms filed by the plaintiff he asked to have the items removed from his arm.

Plaintiff has brought this action against the Warden at St. Brides, Dr. Romm, and two members of the medical staff, whom he refers to as nurses. As to the Warden, plaintiff complains that, in response to his grievances, the Warden has responded that "appropriate medical treatment is being given at this time."[3] As to Dr. Romm, plaintiff states, "I have a paper [clip] in my arm. I put this in my arm befor I came to St. Brids. Dr. Romm will not take this out of my arm." His complaint is similar regarding the two nurses. Generally, he com-

---

1. It is not entirely clear what these metal items are. Plaintiff has referred to them as paper clips, pieces of metal, or, in one instance, an ink pen head. It is not material to the decision here what the items actually are.

2. On the grievance form submitted to the St. Brides administration by plaintiff on January 14, 1983, the St. Brides medical staff responded to plaintiff that all "particles" had been removed as of December 14, 1982 and that the items he was complaining of had been recently placed in his arm. Plaintiff, however, appears

to deny that any items were ever removed from his arm since he entered St. Brides in early November, 1982. For purposes of this opinion, the court adopts all facts to be as stated by the plaintiff.

3. This response also was written by the Warden on the grievance form filed by the plaintiff with the St. Brides administration on February 2, 1983 and submitted to the court by plaintiff as an attachment to his complaint.

plains of a "like [lack] of medical treatment within the institution."

For the reasons developed below, the court shall dismiss plaintiff's complaint, *sua sponte.* So that there may be no misunderstanding as to the grounds upon which this court is acting, the court accepts jurisdiction of the case pursuant to 28 U.S.C. § 1343, and dismisses on the grounds that the case is frivolous. 28 U.S.C. § 1915(d).

## II

## PRISONER CIVIL RIGHTS

As a general rule, there should be no discrimination in the way the courts work, particularly when the issue involves a person's civil rights. In the past two decades, however, special deference has been accorded to that group of litigants composed of prisoners seeking redress for violations of their constitutional and other rights, particularly those proceeding *pro se* and *in forma pauperis.*[4] Certainly, there is no suggestion here that such deference is misplaced. But, as noted by Justice Rehnquist, expanding § 1983 to allow prisoners to take a sabbatical in the nearest federal courthouse, "deprives those courts of the latitude necessary to process this ever-increasing species of complaint." *Cruz v. Beto,* 405 U.S. 319, 327–28, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (1971) (Rehnquist, J., dissenting). *See also Jones v. Bales,* 58 F.R.D. 453, 463 (N.D.Ga. 1972), *aff'd.,* 480 F.2d 805 (5th Cir.) (especially broad discretion of courts in prisoner

civil rights actions); *Boyce v. Alizaduh,* 595 F.2d 948, 951 n. 6 (4th Cir. 1979).

Nevertheless, the courts tend to look the other way when a *pro se* prisoner civil rights case is received, and allow it to proceed through the system without question. This creates a special problem for the courts, however. As reported by the Administrative Office of the United States Courts, total filings of state prisoner civil rights cases in federal courts have grown from 218 in 1966 to 16,741 in 1982.[5] The frustration experienced by the courts in trying to deal with this avalanche of cases has been frequently expressed by Judge Foley:

If every State civil rights complaint is to be filed with direction of service upon named defendants, often in great numbers, the burden placed upon the Court would be greatly increased. It should also be kept in mind that service of these complaints often with demands of millions of dollars does not lead to better the tense relationship that we know exists between inmates and correction officers. Every statistical survey has demonstrated that 95% and above of prisoner civil rights claims that are filed are frivolous. A judge should be allowed the perception to detect the ones with substance and thus relieve State officials and legal officers of the burden of responding to great numbers of frivolous claims.

*Grouchulski v. State of New York,* 481 F.Supp. 1294, 1296 (N.D.N.Y.1980) (on remand from Court of Appeals vacating *sua sponte* dismissal of § 1983 complaint).[6]

4.  *See Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* (Federal Judicial Center 1980) [hereinafter *Aldisert Report*]; *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1971).

5.  *Annual Report of the Director of the Administrative Office of the United States Courts* 102 (1982): "Prisoner petitions regularly represent a substantial portion of civil litigation in the Federal courts. During the twelve month period ended June 30, 1982, prisoner petitions comprised 14.2 percent of all civil filings. State prisoner petitions alone represented 12.1 percent of civil filings. Petitions filed by state prisoners rose to 24,975 or 85.2 percent of all prisoner petitions filed in 1982. The most sig-

nificant increase in state prisoner petition litigation was in prisoner civil rights petitions (up 7.0 percent). A large number of the 16,741 civil rights cases were filed in Virginia, Eastern (1,130) and Florida, Middle (1,012)."

6.  *See also United States ex rel. Sommer v. Dixon,* 524 F.Supp. 83 (N.D.N.Y.1981) (Foley, J.); *Crawford v. O'Hara,* 529 F.Supp. 484 (N.D. N.Y.1982) (Foley, J., on remand). Justice Powell, in his concurring opinion in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1980), expressed the same sentiment. "It is not in the interest of claimants or of society for disputes of this kind to be resolved by litigation that may take years, particularly in an overburdened federal system that never was

Both the Congress and the courts have attempted in the past few years to remedy this situation. In 1980, for example, Congress passed the Civil Rights of Institutionalized Persons Act which, *inter alia,* provided for a state administered grievance procedure which the courts may require prisoners to utilize before bringing certain § 1983 complaints to the federal courts. 42 U.S.C. § 1997 *et seq.,* § 1997e.[7] While it cannot be confirmed as yet, there are indications that such inmate grievance procedures may be helping to cut down on the numbers of frivolous claims coming to the federal courts. Nonetheless, federal judges remain overburdened with such cases, and it is believed there is a need for guidance as to when and how a district court may exercise its broad discretion to dismiss frivolous claims *sua sponte* during initial review, with the ultimate purpose being to preserve more of a judge's precious time for reflection on meritorious claims.

### III

### SUA SPONTE DISMISSAL POWER

█ It is established that a district court has the power to dismiss a complaint, *sua sponte,* either by noting the inadequacy of the complaint and then dismissing it for failure to state a claim under Rule 12, Fed. R.Civ.P., *Harvey v. Clay County Sheriff's Dept.,* 473 F.Supp. 741 (W.D. Missouri 1979); 5 Wright & Miller, *Federal Practice and Procedure,* § 1357 (1969); by way of the court's "inherent power" to take such action under the proper circumstances, *Doe v. Rostker,* 89 F.R.D. 158, 163 (N.D.Cal. 1981); or by way of 28 U.S.C. § 1915(d), through a finding that the complaint, filed

*in forma pauperis* pursuant to 28 U.S.C. § 1915(a), is frivolous on its face, *Fries v. Barnes,* 618 F.2d 988 (2d Cir.1980).[8] There is, however, disagreement within some of the Circuit Courts as to whether such power should be exercised in *pro se in forma pauperis* cases prior to calling for defendant's answer. The Second Circuit has repeatedly reversed such dismissals:

> Great circumspection is required before terminating such actions, particularly in their embryonic stages. It is prudent for judges to avoid an inquisitorial role, and not search out issues more appropriately left to a motion by the opposing party.
>
> If defendants had moved to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, [the prisoner-plaintiff] would have received notice of the challenge to the sufficiency of his complaint. He would have had an opportunity to respond by seeking leave to amend, or setting forth arguments supporting the validity of his claim.
>
> \* \* \* \* \* \*
>
> Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Lewis v. State of New York,* 547 F.2d 4, 5–6 (2d Cir.1976) (reversing district court's *sua sponte* dismissal of prisoner's *pro se* complaint for failure to state a federal claim under § 1983).[9] The Ninth Circuit has also criticized *sua sponte* dismissal of prisoner cases:

> A district court may dismiss an action on its own motion for failure to state a claim, but only after the court takes the

---

designed to be utilized in this way." *Id.* at 554–55 n. 13, 101 S.Ct. at 1922 n. 13.

**7.** Section 1997e(a)(2) requires that the United States Attorney General certify that the state administrative remedies are substantially in compliance with applicable standards set forth in § 1997e(b). In the instant case, Virginia's inmate grievance procedures have been certified by the United States Attorney General.

**8.** Various grounds have been accepted as supporting a *sua sponte* dismissal: *Holsey v. Bass,*

519 F.Supp. 395 (D.Md.1981) (statute of limitations and collateral estoppel); *Holsey v. Collins,* 90 F.R.D. 122 (D.Md.1981) (failure to meet minimal standards of pleading where complaint was "prolix" and "repetitive"); *Franklin v. State of Oregon State Welfare Division,* 662 F.2d 1337 (9th Cir.1981) (lack of jurisdiction).

**9.** The Second Circuit has especially criticized cases in the Northern District of New York, including those of Judge Foley, *supra* note 6.

proper procedural steps. *Dodd v. Spokane County,* 393 F.2d 330, 334 (9th Cir. 1968). The court must permit issuance and service of process as required by Fed. R.Civ.P. 4(a) and the court must notify the plaintiff of the proposed action and afford him an opportunity to submit written argument in opposition. *Id.* at 334. In addition, the court must give a statement of the reasons for dismissal, and an opportunity to amend unless the complaint is clearly deficient. [citations omitted]

*Franklin v. State of Oregon State Welfare Division,* 662 F.2d 1337, 1340 (9th Cir.1981) (*citing Lewis v. State of New York, supra* ). The Ninth Circuit summarized that it opposes *sua sponte* disposition because it "(1) eliminates the traditional adversarial relationship; (2) causes inefficiencies in the judicial process as a whole; and (3) may give the appearance that the judiciary is a proponent rather than an independent entity." *Id.* at 1341.[10]

It should be noted, however, that the criticism of *sua sponte* dismissals in *pro se in forma pauperis* cases centers around those cases which base their dismissals upon a Rule 12(b)(6) rationale. Although it has been said that the federal courts have an inherent power to dismiss *sua sponte* under Rule 12, that power is not expressly lodged in the Federal Rules of Civil Procedure. *Doe v. Rostker, supra* 89 F.R.D. at 163. *Cf. Leonard v. United States,* 633 F.2d 599 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim."); *Dodd v. Spokane County,* 393 F.2d 330 (9th Cir.1968) (federal court may invoke *sua sponte* a motion to dismiss under Rule

12(b)(6) if the proper procedural steps are taken).

Implicitly, the Supreme Court has approved *sua sponte* dismissal of *pro se in forma pauperis* cases brought pursuant to § 1983 on the grounds of failure to state a claim. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), "[t]he District Court, *sua sponte,* dismissed the complaint for failure to state a claim upon which relief could be granted." *Id.* at 98, 97 S.Ct. at 288. The Court noted that the case was dismissed simultaneously with the granting of leave to proceed *in forma pauperis. Id.* n. 2. The complaint involved alleged inadequate treatment of a back injury, and established the rule that in order to state a claim for relief under § 1983 there must be "deliberate indifference to serious medical needs." *Id.* at 106, 97 S.Ct. at 292. The Supreme Court upheld the *sua sponte* dismissal with regard to the doctors, specifically noting that this holding was not contrary to the court's prior ruling in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*supra* note 4 and accompanying text). Justice Marshall noted:

> In contrast to the general allegations in *Haines,* Gamble's complaint provides a detailed factual accounting of the treatment he received. By his exhaustive description he renders speculation unnecessary. It is apparent from his complaint that he received extensive medical care and that the doctors were not indifferent to his needs.

*Estelle v. Gamble,* 429 U.S. at 108 n. 16, 97 S.Ct. at 293 n. 16.[11]

Further, the *Aldisert Report* specifically recommends *sua sponte* dismissal under § 1915(d) where the complaint is irrepara-

---

**10.** The Second Circuit has indicated some relaxation of its apparent opposition to *sua sponte* dismissal based on § 1915(d) prior to answer in prisoner cases, in part based on the *Aldisert Report.* In *Anderson v. Coughlin,* 700 F.2d 37 (2d Cir.1982), the court stated:

> While it is proper, see *Fries v. Barnes,* 618 F.2d 988, 989 (2d Cir.1980); [*Aldisert Report*], *supra* at 73, and even recommended that a decision to dismiss under § 1915(d) be made prior to issuance of process in order to spare the defendant the expense and incon-

venience of answering a frivolous complaint, [*Aldisert Report* ], *supra* at 59, our Court has often admonished that extreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, . . .

*Id.* at 41. *See* discussion *infra.*

**11.** Justice Stevens dissented: "The Court's disposition of this case should not be taken as an endorsement of this practice [of *sua sponte*

bly frivolous or malicious.[12] "The committee recommends that the decision whether to dismiss pursuant to § 1915(d) be made prior to the issuance of process. In this way the defendant will be spared the expense and inconvenience of answering a frivolous complaint." *Aldisert Report* at 59.

The Fourth Circuit has long approved *sua sponte* dismissal prior to issuance of a summons based on the authority of § 1915(d). *Boyce v. Alizaduh,* 595 F.2d 948, 950 (4th Cir.1979); *Graham v. Riddle,* 554 F.2d 133, 134–35 (4th Cir.1977). The court specifically has endorsed the procedure set out in the *Aldisert Report* of first determining if the plaintiff qualifies for filing *in forma pauperis* under § 1915(a), and then determining if the complaint is "frivolous or malicious" thereby warranting dismissal under § 1915(d). *Boyce v. Alizaduh,* 595 F.2d at 950. Further, the Fourth Circuit has interpreted the Supreme Court's *sub silentio* treatment of the procedure in *Estelle v. Gamble* as approval. *Id.* at 950 n. 2, *citing Smart v. Villar,* 547 F.2d 112, 113–14 (10th Cir.1976). While granting broad discretion, however, the Fourth Circuit views the critical issue to be the definition of "frivolous" as used in § 1915(d).[13]

## IV
## DETERMINING FRIVOLOUSNESS

There appear to be two accepted definitions of "frivolous" as used in § 1915(d).

In *Jones v. Bales,* 58 F.R.D. 453 (N.D.Ga. 1972), *aff'd.,* 480 F.2d 805 (5th Cir.), the court stated that "[i]n light of 1915(d)'s general purpose, the specific term 'frivolous' refers to an action in which the plaintiff's realistic chances of ultimate success are slight." *Id.* at 464. The Fifth Circuit subsequently suggested that this test should be whether the complaint was "without arguable merit." *Watson v. Ault,* 525 F.2d 886, 892 (5th Cir.1976).

The Fourth Circuit has indicated that it follows the *Watson* standard, and suggests that the *Aldisert Report* appears to adopt the *Watson* standard. In *Boyce v. Alizaduh* the court set out its definition of frivolous for purposes of § 1915(d):

> To satisfy the test of frivolousness under § 1915(d), it is accordingly essential for the district court to find "beyond doubt" and under any "arguable" construction, "both in law and in fact" of the substance of the plaintiff's claim that he would not be entitled to relief. *Conley v. Gibson* (1957) 355 U.S. 41, 45–6 [78 S.Ct. 99, 101–02, 2 L.Ed.2d 80], . . .; *Watson v. Ault, supra* 525 F.2d at 892.

595 F.2d at 952.

## V
## THE STANDARD

Based on the preceding analysis, it is this court's opinion that a complaint

---

dismissal for failure to state a claim before issuance of summonses] since the question was not raised by the parties." *Estelle v. Gamble,* 429 U.S. at 112 n. 5, 97 S.Ct. at 295 n. 5. *See Franklin v. State of Oregon State Welfare Division,* 662 F.2d 1337, 1341–42 n. 5 (9th Cir.1981) (arguing that since the plaintiff failed to adequately allege a constitutional violation, the courts did not have jurisdiction, thereby distinguishing *Estelle v. Gamble* ).

12. The Report states:
In cases in which leave to proceed in forma pauperis is granted, the court should consider the separate question, under 28 U.S.C. § 1915(d), whether the complaint should be dismissed as "frivolous and malicious." If the court determines that the complaint is irreparably frivolous and malicious, it should be dismissed without affording the plaintiff an opportunity to amend. If the court determines that the complaint is frivolous or mali-

cious, but that the defect can be cured by amendment, the court should issue an order to show cause why the complaint should not be dismissed. The order should explain why the complaint is frivolous or malicious and should allow the plaintiff an opportunity to respond and to amend the complaint. *Aldisert Report* at 59.

13. The Fourth Circuit also notes the importance of adherence to the rule in *Haines v. Kerner, supra,* that "a pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Boyce v. Alizaduh,* 595 F.2d at 951, *citing Estelle v. Gamble.*

brought pursuant to § 1983 by a prisoner plaintiff, proceeding *pro se* and *in forma pauperis,* may be dismissed *sua sponte* based on the statutory authority of § 1915(d), 28 U.S.C. Such disposition should not be based solely upon a Rule 12(b)(6) rationale without benefit of summons upon and answer from the defendant.

■ In issuing a *sua sponte* dismissal, the district court should follow a four step procedure. First, the court should determine the economic status of the plaintiff and, if appropriate, grant *in forma pauperis* status pursuant to § 1915(a). Second, the court must determine that the complaint submitted by the plaintiff is detailed and sufficient enough unto itself to render speculation as to the facts and merits of the case unnecessary. Where the complaint is found to be such, the court must then determine if the complaint is frivolous. In determining this, the court should find that, beyond doubt and under any arguable construction, in law and in fact, the substance of the complaint would not entitle the plaintiff to any relief. Upon such finding, the fourth step is to dismiss the case, *sua sponte,* without affording the plaintiff the opportunity to amend. If, however, the court finds that the complaint is frivolous but that it could be cured, the court should issue a show cause order, explaining why the complaint is frivolous and allowing the plaintiff an opportunity to respond and to amend his complaint.

The second and third steps in the above procedure are specifically intended to respond to the concerns raised by the Second and Ninth Circuits, and implicitly a concern of the Fourth Circuit, that the courts avoid the posture of an advocate in the *sua sponte* dismissal process. *Pro se in forma pauperis*

prisoner plaintiffs should continue to be accorded great latitude in their pleadings and, generally, in their compliance with procedural technicalities. Only where it is obvious from the complaint that the plaintiff has no cause of action should the above procedure be followed.

■ Applying this procedure to the instant case, the court finds that plaintiff's economic status is such as to qualify him for *in forma pauperis* status, and therefore the case shall be so filed. The court further finds that plaintiff's complaint is detailed and sufficient such as to render speculation unnecessary. By his own admissions, plaintiff was seen by the nursing staff at the institution, and by the doctor. Plaintiff admitted in his grievance forms that the doctor had examined him and determined the proper course of treatment to be nonsurgical. In addition, plaintiff has submitted his grievance forms which show that he has submitted his complaint to the appropriate committee at the institution and to the defendant-Warden, the latter having advised him that he deferred to the doctor's recommendations.[14]

Under the third step, the court can find no arguable construction of the complaint which would entitle the plaintiff to relief. The rule set forth by the Supreme Court in *Estelle v. Gamble, supra,* is clear that there must be deliberate indifference to the prisoner's serious medical needs. As in the case of *Estelle v. Gamble,* here it is evident from plaintiff's own complaint that the defendants were not indifferent to his medical needs. He was examined and a medical course of treatment was prescribed. The fact that it was not the course of treatment the plaintiff wanted is immaterial. It may

---

14. A potential alternative ground for dismissal of prisoner civil rights cases brought under § 1983 and complaining of conditions of confinement is to be found in the inmate grievance procedures adopted by states such as Virginia pursuant to 42 U.S.C. § 1997. *Supra* note 7 and accompanying text. While the court in the instant case does not rely upon this ground, it is noted that often state prison's grievance procedures do result in the prisoner receiving some form of relief or recovery. When a pris-

oner subsequently brings a § 1983 action requesting *more* relief, there is an argument to be made that the courts should have the discretionary power to dismiss the case, *sua sponte,* as being frivolous, recognizing that the plaintiff-prisoner has had his "day in court" and received relief or compensation through the grievance procedures and, therefore, should not be allowed to continue to harass his jailers and the system.

be that the plaintiff here has a medical malpractice case against the doctor and his staff if, in fact, the course of treatment prescribed was improper. But, § 1983 is not the proper vehicle for bringing such a malpractice suit, and the federal courts are the wrong forum.

The court further finds, after studying the complaint and attached materials, that amendment of this complaint would not cure the defect. Plaintiff here cannot overcome his own admissions by way of amendment.

Accordingly, the court will order that the instant case be dismissed *sua sponte* as frivolous. 28 U.S.C. § 1915(d). An appropriate order shall be issued this date.