**Judson Warren WHITE, Plaintiff–Appellant,**

**v.**

**C.M. WHITE, Warden; A.V. Dodrill, Commissioner of Corrections, Defendants–Appellees.**

**No. 88–7141.**

United States Court of Appeals, Fourth Circuit.

Argued April 14, 1989.

Decided Oct. 3, 1989.

---

**8.** In a context other than its workers' compensation system, the Supreme Court of Appeals of West Virginia has rejected a challenge to the West Virginia privilege tax on businesses, stating that while different rates may be prescribed for different businesses, "the rate of taxation must be uniform and equal within the classification." *Arslain v. Alderson*, 126 W.Va. 880, 30 S.E.2d 533, 537 (1944). *See also Appalachian Electric Power Co. v. Koontz*, 138 W.Va. 84, 76 S.E.2d 863, 869–70 (1953); *Armco, Inc. v. Hardesty*, 303 S.E.2d 706, 718 (W.Va.1983), *rev'd on other grounds*, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 *reh'g denied*, 469 U.S. 912, 105 S.Ct.

285, 83 L.Ed.2d 222 (1984). The West Virginia Workers' Compensation system assesses premiums based on a number of factors in addition to occupation, including seasonality of work and risk of loss. Those factors are among the typical factors which insurance carriers consider in establishing rates. Because West Virginia's Workers' Compensation law classifies employers on the basis of risk, loss and other seemingly reasonable characteristics and treats all employers equally, the system would appear fair and nondiscriminatory. But as to appellant's specific challenge under the West Virginia Constitution, this Court expresses no view.

missing without prejudice plaintiff's pro se complaint as frivolous within the meaning of 28 U.S.C. § 1915(d). We find that such dismissal was proper and affirm.

## I.

Plaintiff Judson Warren White is an inmate at the Huttonsville Correctional Center. On March 25, 1988, plaintiff tried to mail legal correspondence to his attorney. Under prison directives, plaintiff was classified as a non-indigent inmate since he had had $5.00 or more in his prison account on the fifteenth of the month. As a non-indigent inmate, plaintiff was not entitled to free postage during the course of the month. Since plaintiff had no funds remaining in his account on March 25, he was unable to pay the postage on his letters and thus was not permitted to mail his correspondence.

On April 21, 1988, plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of West Virginia against defendants C.M. Bud White, Warden, Huttonsville Correctional Center, and A.V. Dodrill, Commissioner of Corrections. He alleged, *inter alia*, that he was deprived of meaningful access to the courts as a result of defendants' policy requiring inmates to pay cash for postage. Plaintiff sought injunctive and declaratory relief. The district court granted plaintiff's request to proceed in forma pauperis but dismissed his complaint without prejudice, *sua sponte*, as frivolous within the meaning of 28 U.S.C. § 1915(d). Plaintiff appeals.

## II.

Pursuant to 28 U.S.C. § 1915(d), a trial court may dismiss an in forma pauperis action "if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." *See Boyce v. Alizaduh*, 595 F.2d 948, 950 (4th Cir.1979). The district court need not look beyond the complaint's allegations in making such a determination. It must, however, hold the pro se complaint to less stringent standards than pleadings drafted by attorneys

Richard D. Horn, Student Atty. (Nancy Louise Cook, Washington, D.C., American University Washington College of Law, Appellate Advocacy Law Clinic, on brief), for plaintiff-appellant.

Edward Lee Bullman (Charles G. Brown, Atty. Gen., Dana D. Davis, Sr. Asst. Atty. Gen., Charleston, W.Va., on brief), for defendants-appellees.

Before MURNAGHAN, CHAPMAN, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

In this case we must determine if the district court abused its discretion in dis-

and must read the complaint liberally. Trial courts, however, are granted broad discretion in determining whether a suit is frivolous or malicious. *See, e.g., Flint v. Haynes*, 651 F.2d 970, 974 (4th Cir.1981); *Boyce*, 595 F.2d at 951; *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir.1983); *Holloway v. Gunnell*, 685 F.2d 150, 155 (5th Cir.1982); *Milton v. Nelson*, 527 F.2d 1158, 1160 (9th Cir.1976). Our inquiry is thus limited to whether dismissal was an abuse of discretion. *See Camp v. Oliver*, 798 F.2d 434, 437 (11th Cir.1986).

The Supreme Court recently addressed the § 1915(d) standard for dismissal of frivolous claims in *Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The question before the Court was whether a complaint filed in forma pauperis which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is automatically frivolous under § 1915(d). While noting that there is "considerable common ground" between the standards, *id.*, 109 S.Ct. at 1833, the Court ruled that failure to comply with 12(b)(6) does not necessarily dictate dismissal under § 1915(d).

In reaching its decision, the *Neitzke* Court recognized that the purpose of § 1915(d) is "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Id.* 109 S.Ct. at 1832–33. In order to further this goal while still protecting the rights of indigent litigants under the in forma pauperis statute, the Court announced that a complaint should be dismissed as frivolous "where it lacks an arguable basis either in law or in fact." *Id.* at 1831.

Applying this standard to the facts of its case, the Court affirmed the circuit court's refusal to permit the dismissal of a prisoner's § 1983 claim alleging that he had failed to receive proper medical treatment in violation of his Eighth Amendment rights. The prisoner's complaint alleged that he had notified prison officials that he suffered from a brain tumor, and that they had refused to treat him. It failed, however, to state a claim of "deliberate indifference to [his] serious medical needs," as required in Eighth Amendment suits. The circuit court ruled that given the complaint's factual allegations, it could not determine with certainty that the prisoner was "unable to make any rational argument in law or fact to support his claim for relief," and the complaint therefore could not be considered frivolous. *Id.* at 1830; *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir.1988).

■ In the case before us, the district court did not abuse its discretion in dismissing the complaint. Unlike the complaint at issue in *Neitzke*, plaintiff's complaint failed to contain any factual allegations tending to support his bare assertion that he was deprived by prison policy of meaningful access to the courts. Plaintiff's complaint speculated that the papers "might have helped his attorney." Plaintiff did not allege, however, any detriment to his state appeal as the result of his inability to mail the letter in question. Likewise, he does not dispute that he had eight months to appeal his conviction, during which time he could have informed his attorney of the information in the letter in question at a time when he concededly had funds in his prison account. Nor does he dispute that he had access to a telephone, with which he could have communicated the relevant information to his attorney.

■ It is well settled that "[p]risoners do not have an unlimited right to free postage in connection with the right of access to the courts. Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations." *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir.1978). To state a claim such as this, a prisoner must provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts. *See King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987); *Hoppins v. Wallace*, 751 F.2d 1161, 1162 (11th Cir. 1985); *Twyman*, 584 F.2d at 359. Plain-

tiff's complaint contained no such allegation.

■ Pro se complaints are to be read liberally, but § 1915(d) does not demand that we conclude "White had alleged that he was appealing a criminal conviction returned on the planet Saturn," before such a complaint would warrant dismissal sua sponte as frivolous. *See* dis. op. *infra*, at 732 n. 13. While we do not require that a plaintiff always allege some actual injury in order to avoid dismissal on grounds of frivolousness, we do think it was within the statutory discretion of the district court to dismiss this speculative a complaint, which even appointed counsel on appeal concedes to be "discursive." Although the plaintiff in *Neitzke* prayed for relief at law, and claims of denial of meaningful access will generally seek relief which is prospective, we do not think such differences are dispositive. The district court's view that this complaint should have contained some allegation of adverse consequences allows a federal court to avoid becoming embroiled in the endless litigation of abstract dissatisfactions with prison policies.

Analogous is the rule adopted in some form by every circuit that civil rights plaintiffs must allege with specificity facts to support their claims. *See Hobson v. Wilson*, 737 F.2d 1, 29–30 & n. 87 (D.C.Cir. 1984) (reviewing cases from each circuit). Federal courts have insisted that such plaintiffs allege with specificity some minimum level of factual support in part "to weed out at an early stage frivolous claims." *Hynson v. City of Chester Legal Dept.*, 864 F.2d 1026, 1031 n. 13 (3d Cir. 1988); *see also Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977) (requiring that facts be pled with specificity "[i]n an effort to control frivolous conspiracy suits under § 1983"). Similarly, § 1915(d) seeks to forestall frivolous pro se lawsuits that would not be brought by paying litigants. It is commonsensical that § 1915(d) would require that pro se complaints likewise contain some minimum level of factual support for their claims.

In *Neitzke*, the Court noted that "[t]he brevity of § 1915(d) and the generality of its terms have left the judiciary with the not inconsiderable task[ ] . . . of giving content to § 1915(d)'s indefinite adjectives." *Neitzke*, 109 S.Ct. at 1831. Although the Court provided some guidance by defining frivolousness as lacking "an arguable basis either in law or in fact," *id.*, district courts which must apply § 1915(d) on a day-to-day basis and in a myriad of contexts obviously will play a major role in fleshing out the standard. We do not intend to overturn lightly their judgments in this regard. We need not now attempt to provide an exhaustive definition of frivolousness. It is sufficient to hold that the district court did not abuse its discretion in dismissing this complaint. The dismissal, moreover, was without prejudice, and plaintiff will have ample opportunity to cure any deficiencies in his pleading.

The judgment of the district court is

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

By affirming the district court's *sua sponte* dismissal of White's complaint, the majority acts swiftly to slam tight the federal courthouse doors to *pro se* prisoners who come to us with arguably meritorious complaints. It does this despite recent pronouncements by the Supreme Court that the doors should remain open, at least at the initial pleading stage, as long as the complaint is not frivolous. I believe it is clear, upon the mandated liberal reading of the complaint, that White has raised an arguable basis in both law and fact that the state deprived him of meaningful access to the courts. Moreover, the district court abused its discretion in dismissing *sua sponte* White's complaint before White had an opportunity to discover and to attempt to correct any perceived deficiencies in his pleading. Finally, the majority has erected an insurmountable fence around the same courthouse by adopting a definition of actual injury inappropriate to the facts in the case before the Court. Because of these concerns, more fully developed below, I dissent.

## I. *In Forma Pauperis* Complaints

The trial court dismissed White's *in forma pauperis* complaint as frivolous under 28 U.S.C. § 1915(d). It was authorized to do so only if White's complaint lacked "an arguable basis either in law or in fact." *Neitzke v. Williams,* —— U.S. ——, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989). *See Boyce v. Alizaduh,* 595 F.2d 948, 950 (4th Cir.1979). In making that determination, the district court is obligated to construe the complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (inartfully pleaded allegations of the *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers); *Boyce, supra,* at 957 (district court may not arbitrarily exercise its discretion under 28 U.S.C. § 1915(d) in evaluating the frivolity of a *pro se* complaint; it is an abuse of discretion to dismiss an inartfully pleaded complaint where a sympathetic reading of the complaint indicates that it is not beyond doubt that the plaintiff could prove a set of facts in support of his claim which would entitle him to relief).

I emphatically disagree with the majority's (and the district court's) conclusion that White was not "arguably" entitled to relief and that his complaint failed to state a claim because he did not allege actual injury.[1] Moreover, by merely citing the case for its general definition of frivolity, the majority's opinion pays simple lip service to the recent Supreme Court decision in *Neitzke.* The majority appears to ignore what the Supreme Court had to say about the differences between dismissal under Rule 12(b)(6) and dismissal under § 1915(d) and the trial court's proper role with respect to both inquiries.

In *Neitzke v. Williams,* —— U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), plaintiff brought a § 1983 action claiming that he was deprived of liberty and property without due process of law when the penal institution transferred him to another cellhouse. Williams also claimed that he had been subjected to cruel and unusual punishment in violation of the eighth amendment as a result of certain prison doctors' refusal to treat a diagnosed brain tumor and his forced continuation of prison work. The district court dismissed the complaint *sua sponte* as frivolous under § 1915(d) because it failed to state a claim under Rule 12(b)(6).

The Supreme Court addressed the question of whether a complaint filed *in forma pauperis* which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is automatically frivolous within the meaning of 28 U.S.C. § 1915(d). A unanimous Supreme Court emphatically held "no." To reach the issue, the Court had to define the term "frivolous" for the first time since the statute was enacted in 1892. The Court maintained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Id.* 109 S.Ct. at 1831. In carefully articulated reasoning, the Court explained that the essential difference between a Rule 12(b)(6) dismissal for failure to state a claim and a § 1915(d) dismissal for frivolity is that the former only authorizes a judge to dismiss a claim based on an indisputably meritless legal theory while the latter authorizes a judge to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 1833. The additional screening purpose which § 1915(d) provides is "designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Id.* at 1832–33. Therefore, the Supreme Court held that a complaint is frivolous if it has no arguable basis in law or fact. *Id.* at 1831.

To aid in our understanding of the frivolity test, the Court stated:

> district court was more appropriate to a motion to dismiss under Rule 12(b)(6) for failure to state a claim.

---

**1.** Although the district court dismissed the complaint as frivolous under § 1915(d), the reasons given suggest that the standard followed by the

Examples of the former class [inarguable in law] are claims against which it is clear that the defendants are immune from suit ... and claims of infringement of a legal interest which clearly does not exist.... Examples of the latter class [inarguable in fact] are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.

*Id.* at 1833. Applying the test, the Supreme Court held that there was no arguable legal basis to Williams' due process claim. On the eighth amendment claim, however, the Supreme Court held that dismissal had been improper despite the clearly omitted allegation in Williams' complaint that the defendants had acted with deliberate indifference to his medical needs.

The Supreme Court then explained that when there is an *arguable* legal basis, Rule 12(b)(6) and § 1915(d) serve replicate functions in authorizing dismissal. However, it cautioned that dismissal in such a case while appropriate under Rule 12(b)(6), is inappropriate on frivolity grounds under § 1915(d). *Id.* In reaching that conclusion, the Supreme Court pointed out that Congress' principal objective in enacting the *in forma pauperis* statute was " 'to assure equality of consideration for all litigants.' " *Id.* at 1834 (quoting *Coppedge v. United States,* 369 U.S. 438, 447, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962)); *see also* H.R.Rep. No. 1079, 52d Cong., 1st Sess., 1 (1892). It reasoned that because "a finding of a failure to state a claim does not invariably mean that the claim is without arguable [legal] merit ...," *id.,* 109 S.Ct. at 1833, to permit dismissal on grounds of frivolity would deny indigent litigants the protections, afforded to paying litigants, of "the adversary proceedings contemplated by the Federal Rules." *Id.* at 1834. Thus, in

those cases where the complaint, when construed liberally, has an arguable legal basis, notice of deficiencies in the complaint raised by motions to dismiss and an opportunity to amend, must be similarly afforded to *pro se* plaintiffs. As the Court explained:

> These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action. This adversarial process also crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of the case.

*Id.* at 1834 (citation omitted).

With these principles in mind, we can now proceed to evaluate White's complaint and review the district court's *sua sponte* dismissal of it under § 1915(d).

## II. The Complaint

The district court dismissed White's complaint as frivolous pursuant to § 1915(d) "[b]ecause the plaintiff has not and could not state a cause of action under this set of facts...." *White v. White,* 2:88–0555, Memorandum Opinion and Order dated April 21, 1988, at 2 ("Memorandum Opinion"). It determined that the "basic problem and fatal flaw ... in plaintiff's case is that he has failed to allege actionable injuries." *Id.*

The majority begins its opinion by mischaracterizing White's complaint as alleging that he was deprived of meaningful access to the courts only because the prison postal regulation required inmates to pay cash for postage. Maj. op. at 722, *supra.*[2]

---

**2.** Indeed, the district court had similarly limited White's complaint. It stated that

> From a reading of the complaint, it is apparent that plaintiff complains that the defendants have established a policy at Huttonsville Correctional Center which requires inmates to pay for the postage on their outgoing mail, even legal mail, that is, inmates cannot get credit for the postage and pay later.

Memorandum Opinion at 2. Given its narrow interpretation of the complaint, the district court not surprisingly held that the "policy requiring inmates to pay cash for postage is not arbitrary or unreasonable." *Id.*

The district court utterly fails to comprehend White's complaint. White does not only suggest that the denial of a voucher with which he could have purchased a stamp constituted a denial of his constitutional right to meaningful access to

However, a careful reading of White's complaint clearly reveals that White alleged that he was indigent, that he had legal mail to send to his attorney for his criminal appeal, that he requested the prison official to post his letter, that the prison official refused to do so, that White informed the prison official that she was limiting his right of access to the courts, that he had a deadline by which to send the legal mail, and that he would sign a voucher against his future earnings to pay for the stamp now.[3] The issue is not only whether White had to pay in cash or could pay by voucher, it is primarily whether the state was obligated to provide postage for White's legal mail on March 25, 1988 because he was without funds to pay for it himself.[4] Thus, White's complaint directly implicates his right to meaningful access to the courts as explained in Section III below. White's complaint presents an *arguable* legal and factual basis which is deserving of the procedural protections advanced by the Federal Rules of Civil Procedure.

## III. Meaningful Access to the Courts

Due process mandates that prisoners must be afforded access to the courts "in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." *Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974); *see Johnson v. Avery,* 393 U.S. 483, 485–87, 89 S.Ct. 747, 748–50, 21 L.Ed.2d 718 (1969). "Regulations and practices that unjustifiably obstruct ... the right of access to the courts are invalid." *Procunier,* 416 U.S. at 419, 94 S.Ct. at 1814. More particularly, the Supreme Court recognized that the state had an affirmative duty to provide meaningful access to the courts for incarcerated individuals. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In clear language the Supreme Court pronounced that "[i]t is indisputable that *indigent* inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and *with stamps to mail them.*" *Id.* at 824–25, 97 S.Ct. at 1496 (emphasis added).

*Bounds* has not been interpreted to require that prisons provide unlimited free postage to inmates who wish to communicate their legal matters to the courts or their attorneys. *See King v. Atiyeh,* 814 F.2d 565 (9th Cir.1987); *Chandler v.*

---

the courts. Rather, White contends that he was without funds to purchase a stamp for his legal mail and the prison official refused to post his letter free of charge. Consequently, he could not send his letter to his attorney for purposes of assisting his attorney in preparing and filing his criminal appeal due on April 8, 1988.

3. White averred the following in his complaint: I went to the Post Office window on March 25, 1988, to mail out some legal mail to my lawyer about my appeal that he is filing in the State Supreme Court. The plaintiff is appealing the conviction from the Circuit Court of Kanawha County. The papers the plaintiff wanted to mail to his lawyer, might have helped his attroney [sic], because of the record in the Court's [sic] is confused. I was told that I can't mail anything out because I don't have any monies in my account, that I am 56c in the red. I told the postal clerk that its [sic] legal mail and that I needed to get it in the mail to my lawyer, before my appeal time runs out, on April 8, 1988. I also told her that its [sic] limiting my access to the Court's [sic]. She told me that I know the policy and that she can't do anything about it, that the policy come's [sic] from the Asst. Warden Frank Phares. I was told that I would have to wait intil [sic] I get money on

my account. The plaintiff didn't ask for unlimited free postage. All the plaintiff asked, that he be able to sign a voucher and have it taken from his prison account, when he gets paid for working. The plaintiff asked for nothing free, only a [sic] advancement because of the low pay he gets. The plaintiff explained to the Asst. Warden that they would get the money because of the control they have over the plaintiff's account.

4. Two points are of interest to note here. First, White did not have to offer to pay for the postage some time in the future to make out a claim under *Bounds. See infra,* Section III. In fact, it was far less intrusive on the state for White, after being refused postage, to request credit rather than the free postage to which White may have been entitled.

Second, "credit" must have been approved for the purchase of some items in the prison system since White's account was $.56 in the red. Although we do not address the issue, a policy which permitted credit for the purpose of purchasing candy bars or deodorant but not stamps for legal mail might state a claim under the equal protection clause.

*Coughlin,* 763 F.2d 110, 114 (2d Cir.1985). Such a holding would work a hazard upon prison administrators who must be given the chance to adopt reasonable policies to regulate the receipt, distribution and delivery of incoming mail and the collection and posting of outgoing mail within their institutions. *See cf. Bach v. Coughlin,* 508 F.2d 303, 307–08 (7th Cir.1974) (reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations). However, a prison postal regulation which is unreasonable and which results in denying an individual inmate meaningful access to the courts violates *Bounds. Id.* Here there is a grave question as to the reasonableness of the prison postal regulation.

As we learned in more detail on appeal,[5] the prison directives operated to judge the plaintiff, Judson Warren White, on a non-individualized basis and that seems suspect to me. On the 15th of each month, a status of indigency or non-indigency was decided by prison officials. Prisoners who were determined to be non-indigent on the 15th of a month remained arbitrarily in that category until reassessment of their status on the 15th of the following month, no matter to what extent one's circumstances had changed in the interim. On March 15, under the applicable criteria, which we may assume were correctly applied, White was apparently determined to be non-indigent.[6] He remained in non-indigent status on March 25, 1988, regardless of the change in affairs following the lapse of ten days. On that basis, as non-indigent on March 25,

1988 (though indigent in fact), he was not provided postage for a letter to his lawyer *or* permitted to sign a voucher insuring future payment of a stamp. As a consequence of the prison policies—determining indigent status only once a month and prohibiting the purchase of a stamp by credit—the letter which White attempted to have mailed was neither sent to nor received by his attorney in time to consider its contents in preparation of White's criminal appeal.

## IV. Actual Injury

The majority depends, for the conclusion it has reached, to a great extent on the fact that "[t]o state a claim ..., a prisoner must provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts." Majority op. at 723. The majority then determines that White's averment that the papers "might have helped his attorney" is mere speculation. Moreover, it finds nothing in the complaint to suggest that White suffered any actual injury. The majority errs first in its legal premise and secondly in its factual analysis.

First, the cases upon which the majority relies do not support its sweeping conclusion that White has failed to allege an actual injury. In two of those cases, the plaintiffs were not deprived of meaningful access to the courts, *i.e.* their access was not cut off completely but was merely delayed.[7] The third case I read quite differ-

---

5. Of course, if the district court had been interested in the facts alleged and alluded to in White's complaint, it would have required the state to file an answer. That responding paper should have revealed and explained in detail the objectionable policy, the reasonableness of which has been argued to us on appeal.

6. The majority assumes that White was classified as indigent, was permitted the use of ten one-ounce stamped envelopes during the month of that determination and was reasonably denied any more despite his indigent status. However, we do not know that for certain from the briefs. I read White's brief to state that he was non-indigent, *i.e.* had $5.00 or more, on March 15, 1988 and, therefore, White was not

provided ten free pre-paid envelopes for the month. Consequently, he had to pay for all postage of legal mail at least until April 15, 1988, when he might have been reclassified as indigent if he had less than $5.00 on his account. Despite his apparent "wealth" on March 15, 1988, he was without funds ten days later when he attempted to have his legal mail posted. He was indigent in fact, although he had been denominated non-indigent, a status which entitled him to nothing.

7. Moreover, the district court's dismissal in both cases was not on frivolity grounds. One of the cases appears to have been a Rule 12(b)(6) dismissal; the other dismissal occurred only after a full trial.

ently from the majority and find it extremely beneficial to White's appeal.

In the first case, *Twyman v. Crisp*, 584 F.2d 352 (10th Cir.1978), the plaintiff brought a § 1983 suit challenging a prison postal policy which permitted two free stamps a week to inmates who have less than $5.00 in their accounts. The Tenth Circuit, observing that "[s]ome delays in access to the courts are inevitable[,]" held that Twyman "had not demonstrated denial of *his* right of access to the courts." *Id.* at 359 (emphasis in original). In reaching that conclusion, the Tenth Circuit explained that "Twyman has not had a case dismissed or any other court sanctions imposed simply because he has had to wait for awhile to mail something." *Id.*

Similarly, in *Hoppins v. Wallace*, 751 F.2d 1161 (11th Cir.1985), the plaintiff challenged the stamp policy permitting each indigent inmate two free 20–cent stamps a week and requiring them to pay for additional postage out of their own funds. The Eleventh Circuit adopted the reasoning of the *Twyman* decision and upheld the regulation as reasonable under the undisputed facts. The Eleventh Circuit noted that Hoppins was very litigious and would have used many more stamps than two a week. However, it upheld dismissal of the case because Hoppins could not present any evidence that any of his numerous cases had been dismissed or that any sanction had been imposed by the courts as a result of his having to wait a week to mail papers to the court.

Those cases stand for the proposition, which I believe is a correct one, that delay itself is not an injury which is actionable under *Bounds* and its progeny. *Bounds* is concerned with denial of access to the courts and in both *Twyman* and *Hoppins* the plaintiffs, while denied immediate access to the courts, eventually gained access to the courts without any repercussions. In other words, mere delay in access to the courts does not violate the constitution. It is only when that delay results in prejudice

to the plaintiff's actual access to the courts and somehow interferes with, *e.g.* sanctions, or effectively denies altogether the right, *e.g.* statute of limitations expires, that a plaintiff has a cognizable complaint. There simply is no deprivation of the right of access to the courts where the plaintiff cannot file a lawsuit today as opposed to tomorrow, next week or next month, without some showing that the delay interfered with or prejudiced the actual access to the courts. But to equate unblemished delay in reaching the courts with an outright cutting off of that access is to spurn the constitutional right itself.[8]

More in point is the case of *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir.1987), in which the plaintiff challenged the postal policy which permitted three free letters a week. The Ninth Circuit recognized that although the case law holds that a plaintiff does not have a right to unlimited free postage, it had not established the minimal requirements by which the state could fulfill its obligation to provide indigent inmates with adequate access to the courts. Consequently, the Ninth Circuit explained that a reviewing court "should focus on whether the individual plaintiff before it has been denied meaningful access." *Id.* at 568. *See also Twyman*, 584 F.2d at 359. In *King*, the district court had dismissed the complaint for failure to state a claim because the complaint "failed to allege that the state's policy actually interfered with [the plaintiffs'] ... access to the courts." *King*, 814 F.2d at 568. The Ninth Circuit reversed and remanded, holding that "a close reading of the complaint indicates ... that 'plaintiffs have often found it necessary to communicate with the courts more than three (3) times per week and often the pleadings need more than twenty (20) cents postage.'" *Id.* at 568. Therefore, plaintiffs stated a claim when they alleged that the policy interfered with, *i.e.* denied them, access to the courts which they claimed to require weekly, regardless of the content of those communications.

---

**8.** Of course, this the district court also achieved by truncating White's access to the courts in the case here.

With these principles in mind, we can now turn to evaluate White's complaint to determine whether he has alleged the requisite injury. Focussing, as we must, on the question of whether White has been denied access to the courts, it becomes clear that he has averred a sufficient injury. White attempted on March 25 to mail legal mail to his attorney so that his attorney could consider its contents in preparation of filing White's appeal of his criminal conviction due on April 8. On March 25, White was told that his account was overdrawn and because he was without the requisite $.25 to purchase his own stamp, his letter could not be mailed. Although indigent in fact, White's now-artificial classification as non-indigent prevented him from having his letter mailed. Apparently, under the operation of the pertinent postal policy, White would not be eligible for free stamps until April 15, 1988, seven days after his appeal had to be filed. Therefore, his access has not only been delayed, but delayed to the point that he has missed a filing deadline. That is precisely the kind of actual injury which effectively results in a denial to this individual of his right of access to the courts.

The majority focuses its attention on the statement made by White in his complaint that the information he wished to send "might have helped his attonrey [sic]." It holds that such speculation cannot amount to actual injury.[9]

Fundamentally, that ignores, in my mind, the fact that the communication White sought to activate through use of the post was to a lawyer by one incarcerated in prison. That was, presumptively at least, privileged as a client-lawyer communication and should be immune from disclosure at the initial pleading stage. The majority's approach would erode to a large extent the privilege attaching generally to legal correspondence.[10] At the very least, it was premature to dismiss the complaint as friv-

---

**9.** The district court similarly described White's allegation as conclusory, placing reliance on *Ortega v. Ragen,* 216 F.2d 561 (7th Cir.1954), *cert. denied,* 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268 (1955). Reading that case proved quite illuminating. *Ortega* is a case which addressed the question, and answered it negatively, of whether there is a federal right to meaningful access to the courts. It held "no" 9 years before the Supreme Court recognized the right to counsel in *Gideon v. Wainwright;* 23 years before the Supreme Court acknowledged the due process right in *Bounds;* and 18 years before the Supreme Court unanimously professed the rule of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 that *pro se* complaints must be construed liberally. Amazingly, *Ortega* also held that an equal protection claim could not be brought under § 1983, an absolutely absurd concept today and one not supported by the cases cited by the *Ortega* court. *See Collins v. Hardyman,* 341 U.S. 651, 660–61, 71 S.Ct. 937, 941–42, 95 L.Ed. 1253 (1951) (plaintiffs could not bring a § 1983 action alleging a conspiracy to deprive plaintiffs of their equal protection rights because plaintiffs failed to show state action). I can see no relevance whatsoever in *Ortega* to the case before us. *Ortega's* only significance is as a milestone by which we can measure just how far the constitution has brought us today. To suggest, let alone cite, *Ortega* as controlling authority today indicates to me that the post–1954, not an insignificant year itself (it was in that year that *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), was decided), volumes of the United States Reports should be given perhaps more attention.

**10.** Redundantly, I must again point out that the majority fails to construe liberally the phrase "might have helped his attonrey [sic]." Written by someone not trained in the law and without a license, it is a bit much to expect White to know to what degree and in what way his lawyer would find the information helpful. It is, after all, the lawyer's job to evaluate all relevant material.

Moreover, the majority overlooks what White did allege. White's complaint stated, "I *need* to get [the letter] in the mail to my lawyer before my appeal time runs out, on April 8, 1988." (emphasis added). Furthermore, White did identify the purpose to be served by the letter, *i.e.* to clear up a confusing record. It can hardly be disputed that such information is not only relevant to White's appeal of his criminal conviction, but that a clear record, since that is all that an appellate court has to review, is essential to a fair appeal. For all we know, White's attorney on appeal was not his trial counsel and White's case would be jeopardized when appellate counsel is unable to clarify the record in response to the court's concerns.

Finally, the value of whatever White had to say to his attorney may ultimately be found in the questions it prompts his attorney to pursue and in the cumulative effect of subsequent communications. That White's complaint should live or die on his choice of the word "might" rather than "would" is simply incredible to me.

olous, without requiring an answer, since an inquiry could have been and should have been made by the district court as to whether in the lawyer's view the information (without disclosure of what it was) was material to some legal effort or defense of the plaintiff.

Finally, the majority condemns White's complaint because White had "eight months to appeal his conviction, during which time he could have informed his attorney of the information ..." and "he had access to a telephone...." Majority Op. at 723. Notwithstanding the fact that these arguments, now made by the state on appeal, were not placed before the district court for obvious reasons, I find the points quite ironic given the majority's criticism of White's alleged injury as speculative. To conclude that White could phone his attorney when he had no money is pure conjecture. To presume that White could clarify the trial record in a short phone call or that he could even reach his attorney when he attempted to call fails to afford appropriate concern about the regulation of phone calls in a prison. Furthermore, to infer that everything White might have ever wished to communicate to his attorney about his appeal should have occurred to him eight months ago is entirely unrealistic and unreasonable. White may have just received a copy of the trial transcript which prompted his need to write his attorney. Finally, White's brief reveals a new and completely relevant fact, which appears to have escaped the majority's attention, *i.e.* that his appeal was indeed dismissed, perhaps rendering much, if not all, of the eight month period irrelevant.

Of course, all of that just goes to highlight how arguable the case is and what a waste of time it has been on appeal to attempt to understand what really occurred in the absence of any factual development in the district court. *See Jones v. Morris*, 777 F.2d 1277, 1281 (7th Cir.1985) ("responsive pleadings might produce a more se-cure ground for disposition at the trial level and render useless any appeal").

Lastly, I wish to emphasize that I dissent with the full awareness of the condemnation heard from both district and appellate court judges concerning the rising number of *pro se* prisoner complaints filed under § 1983 over recent years. Despite the staggering number of cases filed, the percentage of claims which withstand motions to dismiss and eventually reach trial has remained absolutely low. *See Hernandez v. Denton*, 861 F.2d 1421, 1431 (9th Cir. 1988) (Aldisert, J., concurring and dissenting).[11]

Indeed, the Second Circuit has eloquently expressed the commonly-held view about the merits (or demerits) of *in forma pauperis* complaints:

> Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with much idle time and free paper, ink, law books, and mail privileges the temptation is especially strong. As Justice Rehnquist has noted, "Though [an inmate] may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse." *Cruz v. Beto*, 405 U.S. 319, 327[, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263] (1972) ([Rehnquist, J.,] dissenting).
>
> . . . .
>
> It is plain to this Court that courts need an extra measure of authority when faced with actions proceeding in forma pauperis—particularly where the action is brought by a prisoner seeking dam-

---

11. In 1968, a total of 1,369 prisoner civil rights cases were filed; 2.3 percent of those reached trial. The number of prisoner civil rights cases filed in 1987 dramatically increased to 22,127, a 1600 percent increase over twenty years. Still, only 3.9 percent reached the trial stage. *Hernandez*, 861 F.2d at 1431.

ages. And it is this court's conclusion that Congress has granted that extra authority by enacting 28 U.S.C. § 1915(d).

*Anderson v. Coughlin*, 700 F.2d 37, 43 (2d Cir.1983) (quoting *Jones v. Bales*, 58 F.R.D. at 463–64).

Such concerns, strenuously echoed at oral argument by the majority, while oftentimes legitimate and borne out by historical fact, must be addressed to Congress. In reviewing White's complaint for an arguable basis in law and fact, our role is "not to make policy, but to interpret [and apply] a statute." *Neitzke*, 109 S.Ct. at 1832. Furthermore, I am satisfied that the case before us differs in critical ways which operate to alleviate the concerns. First, and foremost, the criticisms rest on the explicit premise that the very well established requirement that prisoners be provided with, *inter alia*, mail privileges increases the temptation to file frivolous suits which clog up the federal courts. However, White's complaint contradicts the premise because his suit contests his right to those very mail privileges which were denied to him. If the goal is to reduce prisoner complaints in the federal courts, presumably in a constitutional manner, then the goal was not achieved here by denying White a stamp or alternative method of mailing his letter. The cost of a $.25 stamp has generated yet another § 1983 piece of litigation—the proceeding in the district court and on appeal to this Court—which has been far more time consuming and costly.

Second, White did not want a "sabbatical to the nearest federal courthouse." He wanted a stamp to mail a letter to his attorney concerning his underlying state criminal appeal. It is only as a result of that denial that, at least in the case here, White has become a litigant in the federal system.

Finally, although I hesitate to suggest that an underlying criminal matter is presumptively less-often frivolous than an underlying civil suit, consideration must be given to other constitutional rights which are affected and potentially denied when the question of access to the courts (or to attorneys) involves a criminal defendant's prosecution or a prisoner's appeal of his or her conviction. Particularly as those relate to the right to counsel, a bedrock right which insures fair, reliable trials and the continuing credibility of the criminal justice system,[12] the access pursued by White must be presumptively nonfrivolous and its confidentiality must be protected.

When read under the standard[13] enunciated in *Haines v. Kerner*, White's complaint alleges an arguable basis in both law and fact under *Bounds* and its progeny. I, therefore, dissent.

---

**12.** *See cf. Murray v. Giarratano*, ___ U.S. ___, 109 S.Ct. 2765, 2771, 106 L.Ed.2d 1 (1989) (no right to counsel during postconviction proceedings in death penalty cases because direct appeal, rather than collateral attack, is the primary avenue for review of a conviction or sentence).

**13.** Although the majority agrees that the complaint must be construed liberally, I believe that it fails to do so. I take particular issue with the statement that "[p]laintiff did not allege, however, any detriment to his state appeal as the result of his inability to mail the letter in question." Majority op. at 723. In *Neitzke*, the plaintiff had failed to state that the doctors who denied him medical attention had done so "with deliberate indifference" to his needs. That omission did not prove fatal to his complaint,

however, since it could not be said that it was inarguable on the facts alleged and the complaint could be amended.

Similarly, in the case here, it cannot be said that any perceived deficiency in stating a claim related to White's actual injury could not be corrected by amendment to the complaint. It certainly is arguable in fact that the appeal of his criminal conviction in Kanawha County which did not have the benefit of his information concerning the record was prejudiced by that omission. If, on the other hand, White had alleged that he was appealing a criminal conviction returned on the planet Saturn, it certainly would be beyond dispute that his complaint was "delusional" and "baseless" and warranting dismissal *sua sponte* as frivolous. But he made no such contention, so we should not be saturnine.