**Charles M. BERNADOU, Plaintiff,**

v.

**William PURNELL, et al., Defendants.**

**Civ. No. H-91-1373.**

United States District Court,
D. Maryland.

Jan. 5, 1993.

Charles M. Bernadou, pro se.

J. Joseph Curran, Jr., Atty. Gen., State of MD, and Amy Beth Kushner, Asst. Atty. Gen., Baltimore, MD, for defendants.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Presently confined in the Maryland Penitentiary, Charles M. Bernadou, plaintiff, has filed a civil action in this Court under 42 U.S.C. § 1983. Named as defendants in the

complaint are "Theodore Purnell"[1] (Acting Security Chief of the Maryland Penitentiary), James N. Rollins (former Warden of the Maryland Penitentiary), H.E. Rogers (Classification Supervisor at the Maryland Penitentiary) and Marvin Robbins (Executive Director of the Inmate Grievance Commission).

In his complaint and in subsequent pleadings, plaintiff has alleged that his constitutional rights were infringed by defendants Purnell, Rollins and Rogers when his cell was searched and certain papers were seized. He contends that he was thereby denied his constitutional right of access to the courts. His claim against defendant Robbins is that said defendant denied him due process of law by not holding a meaningful hearing before the Inmate Grievance Commission (hereinafter "the IGC") in connection with plaintiff's claim for the return of his legal papers. As relief, plaintiff seeks substantial compensatory and punitive damages from each defendant. He also asks this Court to enter an Order requiring defendants to return all of his confiscated papers.

On behalf of defendants Purnell, Rollins and Rogers (hereinafter the "Purnell defendants"), the Attorney General of Maryland has filed a motion to dismiss or for summary judgment. A separate motion to dismiss or for summary judgment has been filed by the Attorney General on behalf of defendant Robbins. In support of those motions, defendants have submitted various affidavits and exhibits. Plaintiff has been assisted in this case by Joseph Tetrault, Esq. of the Legal Aid Bureau, Inc., who has filed an opposition to defendants' pending motions. Plaintiff himself has submitted various *pro se* pleadings, memoranda and exhibits.

This case was initially assigned to Judge Ramsey of this Court. By Order dated August 23, 1991, Judge Ramsey referred the case to Magistrate Judge Deborah K. Chasanow to conduct appropriate proceedings and submit recommendations for the disposition of the pending motions to dismiss or for summary judgment. Following her review of the pleadings and memoranda, Magistrate Judge Chasanow filed her Report and Recommendation on August 12, 1992. It was there recommended that the motion to dismiss or for summary judgment filed by defendants Purnell, Rollins and Rogers be denied and that the motion to dismiss or for summary judgment filed by defendant Robbins be granted with leave to plaintiff to amend.

Presently before the Court are defendants' Objections to the Report and Recommendation. In support of their Objections, defendants have submitted a memorandum of law and various exhibits. Both Mr. Tetrault on behalf of plaintiff and plaintiff *pro se* have responded to defendants' pending objections. In addition, plaintiff has filed a request for leave to amend his complaint.

Pursuant to 28 U.S.C. § 636(b), when a party has objected to proposed findings and recommendations of a magistrate judge, the district judge to whom the case is assigned must make a *de novo* determination upon the record of that portion of the magistrate judge's disposition to which specific written objection has been made. *See also* Local Rule 301.1.b. The district judge, may, *inter alia,* accept, reject or modify the recommended decision of the magistrate judge. This case has now been reassigned to the undersigned judge.

Following its review of the full record here, this Court has concluded that no hearing is necessary for a ruling on defendants' pending Objections. *See* Local Rule 105.6. For the reasons to be stated herein, the Report and Recommendation of the Magistrate Judge dated August 12, 1992 will be accepted in part and rejected in part. Defendants' pending motions for summary judgment will be granted, and judgment will be entered in favor of all defendants.

I

*Background Facts*

So that the matters now pending before the Court may be placed in proper perspec-

---

1. The correct name of this defendant is "William Purnell." Docket entries have been amended to correct the error.

tive, it is necessary at the outset to recount plaintiff's prior involvement in various legal proceedings in this Court and in state courts. On June 23, 1975, plaintiff was convicted of first degree murder and various other crimes following a jury trial in the Criminal Court of Baltimore City. He was sentenced by Judge Robert Karwacki to life imprisonment. Plaintiff then appealed to the Court of Special Appeals of Maryland. In an Opinion filed on October 26, 1976, that Court affirmed plaintiff's convictions. *Bernadou v. State of Maryland*, No. 145 (Sept. Term 1976). The background facts were briefly set forth by the Court of Special Appeals, as follows (slip op. at 1):

> During the late morning hours of December 19, 1974, Dr. Fernando Juliao was robbed at gun point while in his office in the Frankford Plaza Shopping Center, situated on Sinclair Lane in Baltimore City. The doctor was severely beaten about the head and body with the culprit's gun. A more dire consequence of the crime, however, was the fact that Mrs. Sandra Sauer, the doctor's secretary, was bludgeoned to death by the robber. Mrs. Sauer's husband, who happened upon the robbery while it was in progress, was also assaulted.

> Following an investigation by officers of the Baltimore City Police Department, Charles Michael Bernadou, the appellant, was charged with the various crimes arising from the December 19, 1974 incident.

> A jury, in the Criminal Court of Baltimore, presided over by Judge Robert L. Karwacki, convicted the appellant of murder in the first degree, assault with intent to murder, robbery with a dangerous and deadly weapon, attempted robbery with a dangerous and deadly weapon, assault, and two counts of using a handgun in the commission of a felony.

> On appeal to this Court, the appellant poses eight questions. We shall answer each issue, but not necessarily in the order that appellant has posited them.

As noted, Bernadou had presented during his appeal eight separate claims, as follows: (1) that the trial court erred in denying Bernadou's motion to suppress evidence seized from his home pursuant to a search and seizure warrant; (2) that one Barbara Bielet was improperly represented as a credible informant to the judge issuing the search warrant; (3) that the prosecutor and the police improperly withheld pertinent evidence; (4) that the trial judge should have granted plaintiff's motion for a mistrial; (5) that the trial court should have *sua sponte* restricted the prosecutor's improper argument; (6) that the trial judge committed plain error in his instructions to the jury; (7) that the jury's murder verdict was void; and (8) that the evidence was insufficient to support Bernadou's conviction. In its 15–page opinion, the Court of Special Appeals considered and rejected each of these contentions. *Bernadou v. State of Maryland, supra.*

On two prior occasions, plaintiff Bernadou has sought post conviction relief in the Criminal Court of Baltimore City.[2] His first petition was filed on September 4, 1975 and resulted in an Order granting him the right to file a belated appeal. His second petition was filed on August 18, 1982. In an Opinion and Order dated August 1, 1983, Judge Byrnes denied relief. Bernadou's application for leave to appeal from that denial was denied by the Court of Special Appeals of Maryland on January 20, 1984.

On one prior occasion, plaintiff Bernadou has sought habeas corpus relief in this Court, that petition having been filed on June 27, 1988. *Bernadou v. Rollins*, Civil No. PN–88–1861. Five grounds for relief were alleged. In a Memorandum and separate Order dated July 8, 1988, Judge Paul Niemeyer of this Court dismissed Bernadou's petition without prejudice because of his failure to exhaust state remedies.[3]

The events which gave rise to plaintiff's pending suit occurred on May 16, 1988 when unidentified state troopers and correctional officers searched plaintiff's cell as part of an institution-wide shakedown which was con-

---

2. That Court is now the Circuit Court for Baltimore City.

3. Although plaintiff had exhausted his state remedies as to one of his claims, he had not done so as to his other four claims.

ducted by prison officials because of ongoing drug problems. Various papers and certain contraband belonging to plaintiff were seized at the time. As a result of the seizure of some of these materials from plaintiff's cell, he was later placed on lock-down for possession of contraband. Some of plaintiff's papers were later found and have been returned to him, but others are still missing.[4] Plaintiff alleges that the seizure and loss of his papers denied him his constitutional right of access to the courts.

Plaintiff has attempted to secure the return of all of his papers by various administrative and legal proceedings. On June 7, 1988, he filed an Administrative Remedy Procedure ("ARP") seeking monetary damages. In particular, he sought the return of photocopies of shotguns of different sizes which were found in his cell. Determining that the photocopies of the shotguns had been confiscated as contraband, the Warden denied this ARP on July 27, 1988. Plaintiff appealed the Warden's decision to the Commission of Correction on August 2, 1988. The appeal was partially granted on August 29, 1988. The Commissioner determined that it had not been confirmed that his personal property was damaged or stolen as the result of staff negligence, but the Commissioner nevertheless directed the Warden and his staff to assist plaintiff in the recovery of his papers.

When the bulk of his papers could not be found, plaintiff filed a grievance with the IGC.[5] Following a hearing on March 14, 1990, plaintiff's complaint was dismissed, and the Circuit Court for Baltimore City thereafter affirmed this dismissal. Bernadou then filed an application for leave to appeal which was granted by the Court of Special Appeals of Maryland. In a *per curiam* opinion filed on May 1, 1991, the Court of Special Appeals vacated the judgment of the lower court and remanded the case to that court for further proceedings. *Bernadou v. Inmate Grievance Commission,* Misc. No. 115 (Sept. Term,

1990). Determining that the tape of the administrative hearing was inaudible in many respects and that an incomplete record had thus been developed before the IGC, the Court directed that the matter be remanded to the IGC to hold a new hearing on plaintiff's complaint. The IGC was directed to prepare a complete and coherent record and determine (1) whether the documents in question existed and (2) whether the documents belonged to Bernadou. If those questions were answered in the affirmative, the IGC was to make further findings of fact as to what happened to the documents, whether they had been properly confiscated as contraband and whether the documents could be recovered and returned to Bernadou, or, if not, whether Bernadou had established their fair value.

A hearing on remand was held before the IGC on September 20, 1991, and plaintiff was awarded the reasonable costs of copying replacement documents. That award was modified on October 17, 1991 by Order of the Secretary of Public Safety and Correctional Services which ordered the Division of Correction to obtain the documents on behalf of plaintiff. On February 26, 1992, plaintiff appealed the Secretary's modification of the IGC Order to the Circuit Court for Baltimore City. The record in this case does not disclose the outcome of that appeal.

## II

### *The Motion of the Purnell Defendants*

■ In support of their pending motion for summary judgment and their Objections to the Report and Recommendation of the Magistrate Judge, the Purnell defendants contend that on this record, plaintiff Bernadou has not shown that he was denied his constitutional right of meaningful access to the courts. Relying on *Carter v. Hutto,* 781 F.2d 1028 (4th Cir.1986), the Magistrate Judge recommended that the motion for summary judgment of the Purnell defendants

---

4. On March 31, 1992, plaintiff received a box containing many of his legal papers. Other papers of his had previously been found in the trash and were returned to him.

5. Under Maryland law, an inmate may file such a grievance if personal property has been destroyed or improperly confiscated by a prison official and may recover the fair value of the lost property. Md.Regs.Code, Title 12, § 07.01.04D.

on the right of access claim be denied. On the record here, this Court has concluded that this recommendation must be rejected and that the motion for summary judgment of the Purnell defendants should be granted.[6]

The Fourth Circuit opinion in *Carter v. Hutto, supra,* was filed in 1986. This Court concludes that *White v. White,* 886 F.2d 721 (4th Cir.1989), a later decision of the Fourth Circuit, is controlling in this case. As Judge Wilkinson held in *White,* a prisoner asserting that his constitutional rights have been infringed because he has been denied access to the courts must allege and show that he was deprived "of meaningful access to the courts." 886 F.2d at 723. A plaintiff like Bernadou must allege that he has suffered a detriment because of the wrongful act of a prison official which denied him the alleged access. *Id.*

Reliance by the Magistrate Judge on *Carter v. Hutto* was misplaced. Indeed, that case involved facts and an issue quite different from those present here. In *Carter,* an actual trial had been held, and the magistrate had concluded following the trial that no search of the plaintiff's cell had occurred and that no papers were taken. Relying on provisions of a Pretrial Order, the magistrate had not permitted the prisoner plaintiff to call witnesses who could have presented relevant testimony on the issues that arose at the trial. The magistrate's recommendation that judgment be entered for defendants was accepted by the district court in *Carter,* and final judgment was accordingly entered. In vacating that judgment and remanding the case for retrial, the Fourth Circuit concluded that the district court had committed reversible error in its overly strict enforcement of its pretrial order. 781 F.2d at 1030. It is thus apparent that the Fourth Circuit did not have before it in *Carter* the question before this Court in this case, namely whether the prisoner plaintiff had been denied meaningful access to the courts by the defendants. That issue was not even litigated in *Carter,* and the language of the opinion relied upon by the Magistrate Judge in this case is pure *dictum.* In *Carter,* the Fourth Circuit did little more than observe that the plaintiff in that case had alleged a claim of deprivation of access to the courts but did not consider, because the question was not disputed, whether the content of the documents allegedly seized was such that the absence of the documents would have detrimentally deprived the prisoner of meaningful access to the courts.

By way of contrast, that specific issue was directly addressed in the *White* opinion. In that case, the district court had dismissed the prisoner's complaint as frivolous because it had failed to contain factual allegations supporting plaintiff's assertion that he had been deprived by prison policy of meaningful access to the courts. In affirming the judgment of the district court, Judge Wilkinson in *White* said the following (886 F.2d at 723):

> [P]laintiff's complaint failed to contain any factual allegations tending to support his bare assertion that he was deprived by prison policy of meaningful access to the courts. Plaintiff's complaint speculated that the papers "might have helped his attorney." Plaintiff did not allege, however, any detriment to his state appeal as the result of his inability to mail the letter in question. Likewise, he does not dispute that he had eight months to appeal his conviction, during which time he could have informed his attorney of the information in the letter in question at a time when he concededly had funds in his prison account. Nor does he dispute that he had access to a telephone, with which he could have communicated the relevant information to his attorney.

> &#42;  &#42;  &#42;  &#42;  &#42;  &#42;

> To state a claim such as this, a prisoner must provide some basis for his allegation that the delay or failure in delivering his legal mail deprived him of meaningful access to the courts. *See King v. Atiyeh,* 814 F.2d 565, 568 (9th Cir.1987); *Hoppins v. Wallace,* 751 F.2d 1161, 1162 (11th Cir. 1985); *Twyman [v. Crisp]* 584 F.2d [352]

---

**6.** Because defendants' motion is supported by affidavits and exhibits, it will be treated as a motion for summary judgment.

at 359 [(10th Cir.1978)]. Plaintiff's complaint contained no such allegation.

Later in the Opinion, Judge Wilkinson said the following (886 F.2d at 724):

> The district court's view that this complaint should have contained some allegation of adverse consequences allows a federal court to avoid becoming embroiled in the endless litigation of abstract dissatisfactions with prison policies.

> \*   \*   \*   \*   \*   \*

> It is commonsensical that ... *pro se* complaints likewise contain some minimum level of factual support for their claims.

Even if the language of *Carter* relied upon by the Magistrate Judge in her Report and Recommendation were not *dictum,* it is apparent that the *White* case is controlling here. *White* was decided three years after *Carter* and has not been overruled by any subsequent decision of the Fourth Circuit. Under *White,* a prisoner, to prevail in a case such as this one, must allege and prove that he was to his detriment denied meaningful access to the courts. As the Court noted in *Kness v. Sondalle,* 725 F.Supp. 1006, 1007 (E.D.Wis.1989), a prisoner's right of access to the courts is not absolute; the constitutionally relevant benchmark is "meaningful, not total or unlimited access."

On the very full record here, this Court has concluded as a matter of law that plaintiff was not denied meaningful access to the courts by the Purnell defendants. He has not alleged nor shown that he has suffered any detriment because of the seizure of his papers by these defendants or by persons acting under their supervision. In his ADR of July 25, 1988, attached as an exhibit to the complaint filed by plaintiff in this case, plaintiff alleges that defendants confiscated papers relating to a post conviction petition which he had been preparing since 1980. However, the record discloses that plaintiff in fact filed a post conviction petition in the Circuit Court for Baltimore City two years later, in 1982. Plaintiff has not explained

why that petition did not include nor could have included matters contained in the papers which he then had in hand and which he now says were confiscated. Nor has he explained why some eight years elapsed between the date when he first began preparing an application for post conviction relief and the date in 1988 when he now claims he was prevented from seeking such relief by the wrongful confiscation of his legal materials.

Plaintiff's contention that he was denied access to the courts is further refuted by the fact that one month after the shakedown at the Maryland Penitentiary, he filed in this Court a nine-page application seeking habeas corpus relief. *See Bernadou v. Warden,* Civil No. PN–88–1861. That petition presented in some detail five separate claims, as follows: (1) that he had been improperly excluded from a bench conference at his trial; (2) that a biased juror presented improper testimony at the hearing on his second post conviction petition; (3) that the jury's verdict of guilty on the murder charge was void because the indictment number was improperly read and the jury was improperly polled; (4) that the trial judge improperly instructed the jury; and (5) that a false affidavit was allegedly used to secure the search warrant. In his letter to the Court submitted when he filed his habeas corpus petition, plaintiff noted that his petition "is slightly longer than your regular habeas corpus form" and that he had tried to present the facts and story "as correctly as possible" based on his memory and his notes. He requested this Court to order that the state court forward the entire record of his post conviction hearing, including the transcript of that hearing. Plaintiff asserted that "without said transcript(s) and the facts in evidence contained therein, a denial of 'due process' and 'equal protection' of the law will continue."

It is apparent from the allegations contained in plaintiff's habeas corpus petition and in his accompanying letter to the Court [7] that plaintiff was not previously denied meaningful access to the courts by the al-

---

7. In that letter of June 20, 1988, plaintiff did not complain that he could not properly present his claims to the Court because his legal materials had been wrongfully confiscated. Rather, he there complained that he had been denied due process and equal protection because he had not been able to secure from the state court reporter the transcript of his post conviction hearing.

leged confiscation by defendants of his legal materials. Plaintiff has neither alleged nor shown in opposing defendants' motion for summary judgment that he has suffered or would suffer any injury or other detriment as a result of defendants' alleged unconstitutional acts. He has not shown that the missing materials were critical to planned or pending court actions. Plaintiff can repeat the same allegations contained in Civil No. PN–88–1861 in a post conviction petition filed in state court or, after exhaustion, in a new habeas corpus petition filed in this Court. Any transcripts or court documents which might be pertinent to a proper consideration of such future petitions can be ordered by the court, if deemed necessary.

■ This Court cannot accept the dubious proposition that the confiscation by a prison official of any post conviction materials of a prisoner, whether frivolous or not, would amount to an actionable constitutional deprivation. As the Supreme Court pointed out in *Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978), constitutional rights "do not exist in a vacuum." Thus, the abstract value of a constitutional right may not form the basis for § 1983 damages, and no compensatory damages may be awarded under § 1983 in the absence of proof of "actual injury." *Memphis Community School District v. Stachura*, 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). At the very least, a prisoner seeking relief under § 1983 for defendants' denial of access to the courts must be required to allege a viable claim. As the Fourth Circuit held in *White*, to prevail in a § 1983 case a prisoner must do more than assert an "abstract" claim. 886 F.2d at 774.

Assuming that the grounds for post conviction relief which would be advanced by plaintiff if he now possessed the missing legal materials are the same grounds previously alleged in his habeas corpus petition, it is evident from the record here that he is not entitled to a recovery from defendants under § 1983. Clearly, he has not been denied meaningful access to this Court for the assertion of those five claims, inasmuch as he filed

his habeas corpus petition *after* the documents were seized. Not only did he allege five different claims in that petition but he also expounded therein at some length on the basis for each claim. Judge Niemeyer denied the petition because plaintiff had not exhausted all of his available state remedies. Following such denial, there was nothing to prevent plaintiff from making the same allegations in a post conviction petition filed in state court. Certainly, the absence of his legal papers would not have prevented him from asserting in a state petition the same grounds for relief which were set forth in his federal petition. If such a post conviction petition had been filed in state court and if that court had determined that transcripts or other court records were necessary for a consideration of plaintiff's claims, the court could order the preparation of the transcripts or the copying of any pertinent court documents.

The lengthy history of plaintiff's various legal proceedings indicates that plaintiff has not in the past nor would he be in the future denied meaningful access to the courts because certain of his legal papers are missing. In prior proceedings, plaintiff has advanced numerous unsuccessful grounds in seeking to set aside his convictions. In his direct appeal, he asserted eight separate grounds for the reversal of his conviction. All of these contentions were rejected by the Court of Special Appeals. In his second post conviction petition filed in the Circuit Court for Baltimore City, his claim that a juror was biased was denied. This claim has now been exhausted in the state courts and may still be presented to this Court in a habeas corpus petition.

■ Moreover, if considered on their merits, none of the five grounds for relief alleged in his previous federal habeas corpus Petition would appear to have merit.[8] Plaintiff's allegations in his habeas corpus petition that the murder verdict was void and that the trial judge improperly instructed the jury were raised in his direct appeal, were considered by the Court of Special Appeals and

---

8. In any event, plaintiff, following exhaustion of *all* of these five claims, could present them to

this Court for final adjudication in a new habeas corpus petition.

were rejected. This Court would agree with the reasoning of the Court of Special Appeals when it found these two contentions to be without merit. Plaintiff's claim of improper testimony at his post conviction hearing must also fail. Plaintiff would not be entitled to federal habeas corpus relief on this ground, inasmuch as this claim represents an attack on proceedings collateral to the detention of plaintiff and not on the detention itself. *Stokley v. State,* 301 F.Supp. 653, 657 (D.Md. 1969); *Cornell v. Maryland,* 396 F.Supp. 1092, 1093 n. 3 (D.Md.1975); *Noble v. Sigler,* 351 F.2d 673, 678 (8th Cir.1965), *cert. denied* 385 U.S. 853, 87 S.Ct. 98, 17 L.Ed.2d 81 (1966). Moreover, since plaintiff was given a full and fair opportunity to litigate his Fourth Amendment claims in the state courts, the contention that the search warrant was defective would not entitle him to federal habeas corpus relief. *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

■ Furthermore, this Court has repeatedly held that a state prisoner is not entitled to federal habeas corpus relief because he was excluded from a bench conference during his trial. *Kober v. Winebrinner,* Civil No. H–84–4271 (Memorandum and Order of May 6, 1985); *Lomax v. Passaro,* Civil No. H–90–2845 (Memorandum Opinion of June 14, 1991). The record here does not indicate that plaintiff's failure to be present at a bench conference held during his trial was so substantially related to the fullness of his opportunity to defend himself as to amount to a constitutional deprivation. *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). A defendant in a criminal case does not have a constitutional right to be a participant in an *in camera* discussion with the court when his lawyer is present. *United States v. Jorgenson,* 451 F.2d 516, 521 (10th Cir.1971), *cert denied* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972).

■ Finally, plaintiff would not in this case be entitled to recover damages for the value of his lost property. Even if a Maryland prison official intentionally destroyed a prisoner's legal materials, such would not be actionable under § 1983 as a violation of the prisoner's due process rights, since the pris-

oner would have an adequate post deprivation remedy under Maryland law. *Hudson v. Palmer,* 468 U.S. 517, 530–33, 104 S.Ct. 3194, 3202–04, 82 L.Ed.2d 393 (1984). Indeed, plaintiff in this case has already availed himself of that remedy and has previously been granted partial relief.

For all these reasons, this Court hereby rejects the recommendation of the Magistrate Judge that the motion for summary judgment of the Purnell defendants should be denied. That motion will be granted, and judgment will be entered in favor of defendants Purnell, Rollins and Rogers.

### III

#### *The Motion of Defendant Robbins*

In her Report and Recommendation of August 12, 1992, the Magistrate Judge recommended that plaintiff's claim against defendant Robbins should be dismissed. That recommendation will be accepted for the reasons stated by the Magistrate Judge.

It was further recommended by the Magistrate Judge that plaintiff be granted leave to amend, and plaintiff has now requested such leave. Such request will be denied inasmuch as the requested amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 192, 83 S.Ct. 227, 275, 9 L.Ed.2d 222 (1962).

■ Defendant Robbins is Executive Director of the Inmate Grievance Office, an administrative agency of the State of Maryland. Plaintiff alleges that the hearing held before the IGC was a farce. However, defendant Robbins did not participate in the hearing which was conducted by Commissioners Hawkins, Millard and Ward. Any unfairness which resulted from this administrative hearing was the responsibility of the Commissioners and not that of defendant Robbins. In any event, if plaintiff was denied due process at his administrative hearing, he was entitled under Maryland law to appeal (as he did) to the Circuit Court for Baltimore City and to further appeal (as he did) to the Court of Special Appeals of Maryland. In any event, the Supreme Court has held that administrative hearing officers are, like judges and prosecutors, absolutely im-

mune from suits alleging constitutional deprivations resulting from the performance of their adjudicatory functions. *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

Accordingly, the motion for summary judgment of defendant Robbins will likewise be granted.

## IV

### *Conclusion*

An appropriate Order will be entered by the Court accepting in part and rejecting in part the Report and Recommendation of Magistrate Judge Deborah K. Chasanow dated August 12, 1992. The Order will also deny plaintiff's request for leave to amend his complaint and will grant defendants' motions for summary judgment.